JAMES I. ALLEN *vs.* AMERICAN BUILDING & LOAN ASS'N *et al.*

Argued April 20, 1892.   Decided May 16, 1892.

**Tort — Conversion of Stock by Irregular Sale of it.**—Where a corporation has practically deprived a stockholder of his stock, and the advantages accruing from its ownership, by bidding it in for itself at a sale which it pretends to make under its by-laws, and on account of the failure of the stockholder to meet and pay certain prescribed monthly dues, an action for conversion of the stock, or one in the nature of an action on the case, will lie against the corporation, although such sale was irregular and illegal, having been conducted in total disregard of the requirements of the by-laws authorizing the same.

**Ratification—In Ignorance of the Irregularity.**—At such sale a portion of the stock was sold to third parties for an amount in excess of the arrearages, and, as provided in the by-laws, this excess or surplus was sent, in the way of defendants' checks, by mail, to the stockholders, who cashed the checks in ignorance of the fact that the sales had been irregularly and illegally conducted and made. *Held*, that this did not amount to a ratification of the irregular and illegal sales. *Held, further*, that this action could be maintained without first returning, or offering to return, the money so received.

Appeal by plaintiff, James I. Allen, from a judgment of the District Court of Hennepin county, *Lochren*, J., entered December 12, 1891.

The American Building & Loan Association of Minneapolis was incorporated under the laws of this State. James H. Bishop, Thomas E. Bishop, and C. Wright Davidson were directors and officers of the corporation, and they and it were the defendants in this action. It issued certificates to those persons who became members, stating that the holder had subscribed for one or more shares, and had agreed to pay sixty cents monthly on each share, of which fifty cents was to go into the loan fund, and ten cents into the expense fund. These monthly payments were to continue for at least two years. After that time the member could withdraw, and receive back the share of his monthly payments which went into the loan fund and six per cent. annual interest. The certificate contained the following:

"*Fifth.* Stock in this association is nonforfeitable; but, if a monthly payment on any share becomes past due for a period of six months or more, such share shall be sold at auction for the purpose of paying the arrearages. The proceeds of the sale shall first be used to pay all back monthly payments and fines; the balance remaining after paying all accrued fines and monthly payments shall be paid to the member in whose name the stock stands at the time of sale. If the stock brings no more than enough to pay the accrued fines and monthly payments, it shall be bid in by the association and canceled, and all money standing to the credit thereof in the loan fund shall be considered profit to the other shareholders."

The by-laws of the corporation provide that, whenever any stock is to be sold for arrearages, a notice stating the time and place of such sale shall be mailed to the owner of such stock at least ten days before the date of sale. The sale may be adjourned from time to time as may be deemed best.

Henry F. Harper and thirty-two others severally became members, and received certificates for shares, and paid all monthly installments thereon for six months and more, and thereafter they each failed for six months to make any payment. The officers of the corporation thereupon sold their three hundred and six shares at auction, in the directors' room in the building occupied by it. No notice of the sale was given to the owners of the shares, nor was any open, public, or general notice of any such auction sale given in any way. Each member's shares were sold separately, and, if any surplus was realized over the amount due for monthly dues and fines, the corporation sent it to the owner by its check on a bank. These checks were received by Harper and the thirty-two others, and each of them except N. O. Roseth accepted his check and drew the money. Roseth refused and returned his check. Afterwards plaintiff obtained from Harper and from each of the thirty-two others an assignment of all their claims and causes of action against the corporation, or against its directors or officers, and brought this action against it and the three directors above named, to recover the value of all the shares of his assignors. He based his action on the ground that the sales were illegally made, and

for much less than their value, and to relatives and servants of these officers.

The trial court found that the sales were irregular and voidable, but that plaintiff's assignors had ratified the sales and waived the irregularities by accepting the checks for the surplus; that the checks were notice sufficient to put the shareholders upon inquiry, and their action thereafter was an election to affirm; but, as N. O. Roseth refused, plaintiff was entitled to recover of the corporation the net surplus value of his ten shares; and gave plaintiff judgment for $60, and costs. The action was dismissed as to the other defendants.

*Lusk, Bunn & Hadley,* for appellant.

The small remittance received by the stockholder in ignorance of the facts did not foreclose the right to sue when the wrong was discovered. The true doctrine of ratification is that there must be knowledge of all the material facts. Story, Ag. § 239; *Bryant* v. *Moore,* 26 Me. 84; *Ritch* v. *Smith,* 82 N. Y. 627; *Thacher* v. *Pray,* 113 Mass. 291. The trial court suggested that, when the remittance was received, the stockholder should have inquired about, and learned, the facts. This, we submit, is not the law. On the contrary, the rule is, that, even where want of knowledge arises from carelessness and neglect in learning the facts, it defeats ratification. *Combs* v. *Scott,* 12 Allen, 493; Story, Ag., note to section 239. An obligation to return property or money received in ignorance, after knowledge and before suit, arises in cases only where the plaintiff has, before suing, to rescind an executed contract or settlement. *Thacher* v. *Pray, supra; Gould* v. *Cayuga Co. Nat. Bank,* 86 N. Y. 75. But here there was no contract between the parties and no settlement. The action is for a tort, and the remittances received could only reduce the damages. There is nothing to rescind.

Laws 1889, ch. 236, §§ 27, 28, apply to regulate sales of stock issued before, as well as that issued after, its passage. *Sinking-Fund Cases,* 99 U. S. 700; *Opinion of the Judges,* 9 Cush. 604.

*Rea & Hubachek* and *Chas. M. Cooley,* for respondent.

It is true that ratification cannot take place without knowledge of all of the facts on the part of him who ratifies. If he remains in

ignorance of the truth, he cannot act intelligently, and cannot be bound by his unadvised action. But it is equally true that a person is chargeable, not only with such knowledge as actually comes to him, but with such knowledge as he might have received had he prudently followed up the facts which actually came to his notice. These sales were irregular, and were voidable. *Bryan* v. *Baldwin,* 52 N. Y. 232; Cook, Stocks, § 129; Beach, Corp. 589.

But they were the subject of ratification. Ratification may be presumed from acquiescence, and when the conduct of the parties is inconsistent with any other supposition than that he intended to ratify the transaction.

COLLINS, J. It was held by the court below, and stands undisputed here, that the sales of stock then owned by plaintiff's assignors in defendant corporation were unlawful and indefensible, because the power to sell was improperly and defectively exercised. A by-law of defendant association, also made one of the terms and conditions of the stock certificates, as the same were printed and issued, requiring and providing for a sale at public auction, in case of a failure to meet the prescribed monthly payments for a period of six months, was ignored and disregarded, to the extent that the sale was in the directors' room in the offices of the corporation, and no open, public, or general notice of the same was ever given. By the same by-law it was also provided that, whenever any stock was to be sold for arrearages in the monthly payments, a notice should be mailed to the owner of the stock ten days, at least, before the day of sale, stating the time and place of such sale. This express and important provision was also ignored and disregarded, and the sales made without any attempt to notify stockholders in default, by mail or in any other manner. Hence the conclusion of the trial court that the sales were irregular and unlawful. The defendant association bid in all stock for which no greater sum was offered than the amount due for monthly payments and fines, and, under the by-laws, this amounted to a cancellation of the stock thus sold; all money standing to the credit thereof, in what was styled the "Loan Fund," and which was five sixths of the sums theretofore paid in by the stockholder, and all

fines, immediately becoming profits for remaining members. As to this stock, it was held below that there still existed and remained with the derelict stockholders the right to make payment to defendant association of such sums of money as might be necessary to place the stock in good standing, thus reinstating the holders as completely as if the pretended sale had not been made; and that without such payment of arrearages, or a tender of payment, followed by a refusal or wrongful act of the association, no action to recover the stock or its value would lie.

When an amount was bid for the stock, at the sale before mentioned, in excess of the sums due for monthly payments and fines, the same was sold to an individual, and thereupon it was transferred, upon the books of the association, to the name of the purchaser. The association then sent its check to the original stockholder by mail for the amount of such excess. These checks severally referred to the number of the certificate of the stock sold, and purported to be on account of what was due as excess or surplus arising from a sale at auction of the stock of the persons to whom the checks were made payable. They were received by the proper parties, who proceeded to collect the money thereon, and to retain the same, with a single exception. One stockholder declined to accept and promptly returned the check. It was determined below that, with the exception mentioned, the stockholders whose shares were purchased by individuals had expressly ratified the sale, waived its irregularities, and rendered it valid. The right of plaintiff, as the assignor of these stockholders, to recover as for a conversion of the stock shares, was denied, on the sole ground that the sale and its consequences, which under the by-laws was a transfer of the stock to the purchaser upon the defendant's books, and the total exclusion of the original owner, had been acquiesced in and ratified by such of the stockholders as had received and kept sums of money derived at a sale of their stock for delinquencies well known to them; and this view was followed up and emphasized by directing a recovery against the defendant to the extent of the value, at the time of the sale, of the shares held by the party who refused to accept a check for the alleged surplus.

The first inquiry of consequence here is as to the rights of the

plaintiff, solely as the assignor of persons whose stock was bid in by the association. His rights are those of his predecessors in interest, and, if an action for the conversion of their stock, or one in the nature of a special action on the case for a wrongful interference with their rights as stockholders, could have been maintained by them after the pretended sale, and prior to the assignment, that remedy is the plaintiff's, and may be exercised by him. His counsel do not seriously contend that, in a case of this character, a payment or tender of the delinquent amounts could not have been made, and, in case of a refusal on the part of the association, an action would not lie to restore the stock and its owner to good standing in that body; but their contention is that as the association has asserted and insisted upon the regularity and validity of the sale of all the stock, and that by reason of the same the title has been absolutely divested, and the original owners deprived of all interest therein, or in the body corporate, they may take the latter, if they choose, upon the ground it has elected to occupy, and recover from it in the same manner and to the same extent as if the sales had been made and the title transferred upon the books to a third party, as was the case with reference to a portion of the stock. This position would be unassailable if the property in question was anything but stock shares, and the defendant anybody but the corporation issuing the same; and we are unable to discover any good reason for saying that a valid distinction can be made between the situation here and any other in which an agent or a pledgee has improperly appropriated his principal's property to his own use. The fact that the right to follow and recover the property itself can be exercised does not stand in the way of an action to recover its value, if the owner elects to pursue that remedy. He may have a choice of remedies, but we cannot see why he may not adopt the one selected by plaintiff as to that part of the stock bid in and appropriated by the association itself, if he has that power as to the stock which it caused and permitted to be bid in and appropriated by third parties. It is certainly immaterial to the corporation which course is followed, for in one case the stock itself would be recovered; in the other, its value only. When the ele-

ments exist which are essential to authorize or constitute an action for conversion of shares of stock, or one in the nature of a special action on the case, it must, on principle, be wholly immaterial who has become the purchaser at a sale, or whether it sold for the amount due as arrearages, and for which the corporation had a lien, or for more than that amount.    The right of action, in either case, is founded upon the fact that there has been a distinct act of dominion wrongfully exercised over the stockholder's property, inconsistent with his right and in denial of it.    The defendant practically deprived the owner of his stock, and the advantages accruing from its ownership, by bidding it in for itself.    This was an act of interference, subversive of the right of the stockholder to enjoy and control the stock, and may be treated by him as a conversion of his property.    See Mor. Corp. §§ 208, 567; Cook, Stocks, § 576; and 1 Lawson, Rights, Rem. & Pr. § 466, with the cases cited on the subject.

Our next inquiry is in reference to the claim that such of plaintiff's assignors as received and cashed defendant's checks for the excess or surplus must be regarded as having acquiesced in and ratified the irregular sales.    That, with knowledge of all material facts as to the irregularities, these delinquent stockholders might acquiesce in and ratify, and thereby estop themselves from questioning the validity of, the sales, is admitted by appellant's counsel.    Their contention is, however, that, from the undisputed facts, it clearly appears that the stockholders were ignorant of the invalid acts referred to, and that solely by reason of the remittances it cannot be held that the stockholders had constructive notice of the various irregularities of which the plaintiff complains, and with this notice accepted the defendant's money.    It is true that the stockholders knew, or should have known, that they were in arrears with their monthly payments, and that by reason thereof the right had accrued to the association to sell their stock.    It is also true that when receiving the checks they were informed of the claim that this right had been exercised, and sales made, by means of which their stock had been disposed of by the corporation, and they, as stockholders, had been ousted from membership therein; and they were also aware of the fact that no notice had been received by them of the time and place

of sale, as provided for in the by-laws, through the mails or otherwise. But there was nothing in this which suggested that the association had totally failed to observe the very wholesome and essential requirements of the by-laws when the power to sell was exercised. The very natural presumption in such a case would be that the officers of the corporation had properly performed their duty, and had conducted a public competitive sale in a place and in such a manner as would attract attention, and tend to promote competition; in a word, that the stock had not been sold in privacy, but at public auction. On this presumption the owners had a right to rely until the material facts which overthrew it came to their knowledge. The court below was in error when saying, as it did, in substance, that it was incumbent upon the stockholders, knowing, when they appropriated the proceeds of the checks, that the prescribed notice to which they were entitled had not come to their hands, to forthwith inquire into the manner and regularity of the sale; and that neglect and omission to make further inquiry amounted to a ratification of the same. The reception of these checks, with the knowledge before mentioned, did not impose the duty upon the stockholders of promptly investigating the proceedings of the defendant's officers, when pretending to satisfy its liens upon the stock for arrearages and fines, nor can their acquiescence and ratification of the omissions and irregularities be presumed from the bare fact that they received and retained the money. *Combs* v. *Scott*, 12 Allen, 496; Story, Ag. § 239, note.

All this was done when there were no circumstances in the possession of the stockholders which would excite suspicion or suggest investigation, and when they were in ignorance of the material facts, knowledge of which was essential to a ratification. The trial court erred when it declared that, if the stockholders chose to treat the sale as valid, and to make no inquiries when receiving their checks, there was a ratification which would bind them in the absence of active concealment, misrepresentation, or artifice on the part of the association, calculated to deceive them and prevent scrutiny; and, as before intimated, it was error to hold that an action of the character of the present one could not be maintained as to the stock

which was bid in, purchased, in effect, by the defendant itself.    The remedies are cumulative in such cases.

By the counsel for respondent it has been argued that, upon discovering the unlawfulness of the sales, it was incumbent upon the stockholders, or the plaintiff, to promptly disaffirm, by returning, or offering to return, the defendant's money paid over as alleged surplus; and that its retention, after learning the facts, amounted to a ratification.    Retaining the money in silence, and without objection, for an unreasonable length of time, with knowledge of the material facts, might be regarded as a ratification by acquiescence.    But this was a transaction between parties standing, as to the stock to be sold for delinquencies, in the relation of principal and agent, or pledgor and pledgee.    Disregarding the obligation resting upon it as agent or pledgee, the association unlawfully and wrongfully converted the stock shares to its own use, under the pretense of a sale, and for this tort an action to recover damages has been brought. The amounts remitted to the stockholders, on account of this unauthorized sale of the stock, would simply serve, upon a proper showing, to reduce the amount of plaintiff's recovery.    Certainly the law would not require the absurd and idle ceremony of tendering or returning the amount of the remittances in order to avoid the charge of having ratified the transaction, and as a foundation or condition to the bringing of an action to recover it in the way of damages.

Judgment reversed, and case remanded, with directions to enter judgment for plaintiff against the American Building & Loan Association as demanded.

Application for reargument denied June 29, 1892.

(Opinion published 52 N. W. Rep. 144.