CHARLES W. CARPENTER *et al. vs.* AMERICAN BUILDING & LOAN ASS'N.

Argued June 8, 1893. Affirmed Aug. 17, 1893.

**Owner has the Choice of the Remedy when his Goods are Converted.**

As a general proposition, when an actual conversion of chattels has taken place, the owner is under no obligation to receive them back, when tendered by the wrongdoer. There may be exceptions to this general rule when the wrong lacks the element of willfulness, has been committed in good faith, and the court, in its discretion, orders a return upon timely application by the defendant, in an action of trespass or trover, accompanied by an offer to pay all costs, and a showing that no real injury will have been suffered by the plaintiff when possession is restored.

**Same, if his Shares of Stock are Converted.**

*Held,* in an action identical with that of *Allen* v. *Same Defendant,* 49 Minn. 544, that the defendant association could not bring itself within the exceptions to the general rule before noted by an offer to reinstate delinquent shareholders upon payment of accrued dues and fees, made after the determination of that case.

**Action to Recover the Value—Certificate for the Stock Need not be Produced and Surrendered.**

*Held,* further, that it was not incumbent upon the plaintiffs, assignees of the original shareholders, to produce and surrender up the share or stock certificates in order to maintain an action for their value.

Appeal by defendant, the American Building and Loan Association, from a judgment of the District Court of Hennepin County, *Wm. Lochren,* J, entered January 5, 1893, against it for $4,623.47.

The plaintiffs, Charles W. Carpenter and William G. Bissell, commenced this action June 22, 1892, against the Association, James H. Bishop and Thomas E. Bishop, defendants, to recover damages for the conversion by them of 2,550 shares of stock in the Association. Plaintiffs bought this stock and right to damages for its conversion from one hundred and eighty-six different stockholders. They claimed $11,536.50 damages with interest. The American Building and Loan Association was incorporated under the laws of this State, and located in Minneapolis. The Bishops were directors and officers of the corporation. It issued certificates to those persons who became members, stating that the holder had subscribed for a certain number of shares and had agreed to pay sixty cents monthly on each share, of which fifty cents was to go into the loan fund, and ten cents into the expense fund. These monthly payments were to continue for at least two years. After that time the member could withdraw and receive back the share of his monthly payments, which went into the loan fund, and six per cent. interest. The certificate contained the following:

"Stock in this Association is nonforfeitable; but, if a monthly payment on any share becomes past due for a period of six months or more, such share shall be sold at auction for the purpose of paying the arrearages. The proceeds of the sale shall first be used to pay all back monthly payments and fines; the balance remaining after paying all accrued fines and monthly payments shall be paid to the member in whose name the stock stands at the time of sale. If the stock brings no more than enough to pay the accrued fines and monthly payments, it shall be bid in by the Association and cancelled, and all money standing to the credit thereof in the loan fund shall be considered profit to the other shareholders."

The by-laws of the corporation provide, that whenever any stock is to be sold for arrearages, a notice stating the time and place of such sale shall be mailed to the owner of such stock, at least ten days before the date of sale. The sale may be adjourned from time to time, as may be deemed best.

W. E. Edwards and one hundred and eighty-five others severally became members and received certificates for shares, and paid the monthly installments thereon for six months or more, and thereafter they each failed for six months to make the monthly payments. The officers of the corporation thereupon sold the 2,550 shares at auction, without giving the required notice. Each member's shares were sold separately, and the small surplus realized over the amount then due for monthly dues and fines, was sent by the corporation to the owner. The owners received and retained the money, but afterwards assigned all claims to the plaintiffs. They based the action upon this want of notice, and also alleged that the sales were clandestinely made to relatives and servants of these officers. The defendants admitted the notices of sale were not properly given, and alleged that in May, 1892, it had offered to restore and reissue the stock, on receiving all back monthly installments and fines which had fallen due meantime. That it had also given due notice that if the claimant failed to accept the offer and pay, on or before June 23, 1892, at ten o'clock in the forenoon, it would resell the stock at auction. That neither the plaintiffs nor their assignors had so paid, and that the stock was sold on that day to satisfy arrearages, and was bid in by the corporation and marked cancelled upon its books.

The trial court found that plaintiffs were not required to accept the stock in satisfaction of their claim for its conversion, and held that the measure of damages was the amount standing to the credit of the stock in the loan fund at the date of the first sale, with interest from that date, without any rebate for fines or installments which thereafter matured. Defendant appeals.

*C. M. Cooley, Hart & Brewer,* and *Rea & Hubachek,* for appellant.

The contract between the defendant corporation and the plaintiff's assignors, while styled a stock certificate, is really an executory contract for the purchase of the stock upon the installment

plan, the so-called stockholder not having an indefeasible and non-forfeitable title until he shall have fully paid for such stock. The corporation has a lien for the unpaid monthly installments, and can enforce the same in the manner provided in the contract and by-laws. 1 Morawetz, Corp. § 500; Endlich, Building Ass'n, § 450.

The first sales are admitted to have been void. The court in its findings declares them void for the reason that they were not properly advertised. The stockholders were then notified that such sales were void, and that the defendants claimed nothing on account thereof. Thereafter the plaintiffs sued the defendants, as for a conversion without making any demand to have the stock reinstated, and without making or tendering payment of the *bona fide* indebtedness existing in favor of the corporation, which was a lien upon said stock. Such suit cannot be maintained without having first paid or proffered such indebtedness. *Fairbank* v. *Phelps*, 22 Pick. 535; Cooley, Torts, §§ 520, 521; *Lord* v. *Price*, L. R. 9 Ex. 54; *Halliday* v. *Holgate*, L. R. 3 Ex. 299; *Cumnock* v. *Institution for Sav.*, 142 Mass. 342; *Talty* v. *Freedmans' Sav. & T. Co.*, 93 U. S. 321; *Lewis* v. *Mott*, 36 N. Y. 395.

There is but one recognized exception to the above proposition, and that is, where the pledgee has put the securities beyond his reach by an illegal sale of them, so that he cannot make return thereof. *Powell* v. *Gagnon*, 52 Minn. 232; *Norgren* v. *Edson*, 51 Minn. 567.

If the defendant came lawfully into the possession of the goods, and the conversion thereof was technical only, without willful wrong upon its part, and the property remains *in statu quo*, the defendant may compel the plaintiff to accept it in mitigation of damages. *Pickering* v. *Truste*, 7 T. R. 53; *Worman* v. *Kramer*, 73 Pa. St. 378; *Kaley* v. *Shed*, 10 Met. 317; *Rutland & W. R. Co.* v. *Bank of Middlebury*, 32 Vt. 639; *Delano* v. *Curtis*, 7 Allen, 471.

*Norman Fetter, Dodd & Bowman,* and *Lusk, Bunn & Hadley,* for respondents.

Assuming that the first sales and the cancellation of stock under them constituted a wrongful act, giving the plaintiffs a right to bring this action, that act was perfect before May and June, 1892, when defendants offered to return the stock. Consequently the

offer to return does not defeat that right of action; it can go at most only to mitigate damages. Now there is a well-defined class of cases where in trespass, trover or replevin the defendant may mitigate the damages, may reduce them to a nominal sum by a timely and proper return of the property. But this is not such a case. The leading case is *Fisher* v. *Prince*, 3 Burrows, 1363, decided by Lord Mansfield. His Lordship denied the application to return the goods, because of their uncertain quality and quantity and the difficulty of saying that they were of the same value as when taken. *Allen* v. *American B. & L. Ass'n*, 49 Minn. 544; *Pickering* v. *Truste*, 7 T. R. 53; *Budd* v. *Multnomah St. R. Co.*, 15 Oreg. 413; *West* v. *Taunton*, 6 Bing. 404; *Earle* v. *Holderness*, 4 Bing. 462.

The whole subject was very fully considered in *Hart* v. *Skinner*, 16 Vt. 138, which has become the leading case on the subject in this country. *Tracy* v. *Good*, 1 Clark, (Pa.) 472; *Churchill* v. *Welsh*, 47 Wis. 39.

The principle deducible from the cases is this: The property may be returned in the discretion of the court, where the wrong was committed in good faith, in belief that the wrongful act was lawful, if it is made also to appear to the court by the defendant, on timely application and offer to pay the costs, that a return of the specific chattel will make the plaintiff fully good. It must be shown that after such return the plaintiff will be *in statu quo*, and will have suffered no real injury.

It is said that trover cannot be maintained without a tender of what is due as a lien on the property. This is true of actions to recover the property *in specie*, but it is not true of special actions to recover damages for tort arising in breach of contract. In such actions the defendant's lien is allowed as an offset to damages.

This is just what the court below did in this case. It proves nothing to cite authorities, as defendants do, at great length, to show that the pledgor cannot bring trover without tendering the debt, on the principle that to maintain trover a legal title and immediate right of possession is necessary. For, *first*, it is clear that this is not a case of pledge. A pledgee has a title in the thing paramount to the pledgor's title, and forbidding his right to immediate possession. Here the full title remained in the stockholders

after default, and the corporation had a mere lien, or rather a mere right of sale, under the contract. And, *second,* this is no action of trover, it is a special action on the case for damages for a wrong founded on breach of contract. Although the unlawful sale does not *per se* operate as a conversion, yet the pledgor may, at his option, so consider it, and may regard the contract as at an end, tender or offer to pay his debt, and demand his pledge, or may sue for damages for the sale. The whole subject is learnedly and fully discussed by Mr. Bigelow in his Leading Cases on Torts in a note to *Donald* v. *Suckling,* p. 420, *et sequa.*

The point that plaintiff must surrender up or produce the certificates for this cancelled stock is clearly not well taken. We are not asking for a transfer of stock certificates on the corporate books, as in *Joslyn* v. *St. Paul Distilling Co.,* 44 Minn. 183. The certificates are not negotiable, and their assignment could give the purchaser no greater rights, as against the corporation, than the assignors had. *Hammond* v. *Hastings,* 134 U. S. 401. The plaintiff does not claim to be the assignee of the stock, but only of the cause of action for damages against the corporation.

COLLINS, J. In substance, the complaint herein is identical with that involved in *Allen* v. *American B. & L. Ass'n,* 49 Minn. 544, (52 N. W. Rep. 144.) The conspicuous difference in the answers in the two actions is that in the case just mentioned the defendant association justified the transactions of which the plaintiff complained, affirmed the regularity and validity of the alleged sales, and relied upon them as a perfect defense to the cause of action, while here the answer disaffirmed and repudiated the sales, expressly averred their invalidity, and alleged that in the month of May, 1892, the various stockholders had been notified by mail that such pretended sales were null, and had no effect upon their rights, and that they were entitled to reinstatement, upon payment of actual dues and fines; and the stockholders were further notified that, unless their stock was reinstated upon the terms proposed, a sale of the same would be made on June 23, 1892, pursuant to the by-laws of the association. The court below found that nearly all of the pretended sales had been made in the years 1889 and 1890. It further found that the notice just referred to

was issued in the month of May, 1892, by means of a circular let-
ter, in which it was stated that said sales had been declared void
by the courts of the state.    It is a fair inference that until this
circular was promulgated the defendant had persisted in its asser-
tion that the sales were regular and valid; and as the opinion
in the *Allen Case* was filed on May 16, 1892, it may also be in-
ferred that the circular was prepared after that date, and was
induced by the result of that action.    The trial court also found
that the present case was commenced June 22d, and that the as-
signments under which the plaintiffs claim were executed and de-
livered prior thereto.    It was found that on June 23d the stock
shares had been sold to defendant, in pursuance of the circular no-
tice, and that, in form, the sale was regular.

We regard this cause as wholly controlled by that of *Allen* v.
*American B. & L. Association, supra.*    It was said in the opinion
therein—and our views remain the same—that the right of ac-
tion there recognized and upheld was founded upon the fact
that there had been a distinct act of dominion wrongfully exer-
cised over the shareholders' property, inconsistent with their
rights, and in denial of them.    The defendant corporation, by as-
suming to sell, and wrongfully selling, the shares, deprived the
owners of their stock, and the advantages accruing from it, as
much when bidding it in for itself as when it accepted the bid of
a stranger, and then transferred the title on its books.    This, it was
said, was an act of interference, subversive of the rights of the
stockholders to enjoy and control the stock, and may be treated
by them as a conversion of their property.    That any distinct act
of dominion wrongfully exerted over one's property, in denial of
his right, or inconsistent with it, amounts to, and may be treated
as, a conversion, was recognized long ago in this court, in *Hossfeldt*
v. *Dill*, 28 Minn. 469, (10 N. W. Rep. 781.)    The right, then, of the
original shareholders, or of these plaintiffs, as their assignees, to
maintain this action, was perfect from the day it accrued up to
the time that defendant association abandoned its former line of
defense, and offered to reinstate,—a period of from two to three
years.    This was settled in the *Allen Case*; so that the present
inquiry is solely as to the effect of the offer to reinstate upon an
existing and perfect right of action then held by the shareholders

or by the plaintiffs, and the offer was nothing more than an offer to return to the rightful owner property already converted to the defendant's use. It was an attempt on the part of the association, after it had actually converted the stock shares to its own use, and had for the term of from one to three years denied that the former owners had any interest in the same, to compel them to receive back the converted property, against their will. The palpable purpose of the offer to reinstate was to deprive the shareholders of a clear right possessed by each to elect as between remedies,—to determine whether their actions should be brought to recover the stock shares *in specie,* or to recover for the value of the same. If the offer could be given the full effect desired, the defendant would be allowed to perpetrate a wrong; to persist that it had authority so to do; and finally, when defeated in the courts, to take away from the injured party his right to pursue his choice of concurrent remedies. It-is safe to say that the option as to remedy is not with the party who has inflicted the injury, for if it were he would be permitted to take advantage of his own wrong.

It is well settled, as a general proposition, that when an actual conversion of chattels has taken place the owner is under no obligation to receive them back, when tendered by the wrongdoer. 6 Bac. Abr. 677; 9 Bac. Abr. 559; 4 Amer. & Eng. Enc. Law, 125, and cases cited. The right of action is complete and perfect when the conversion takes place, and the object of the action is to recover damages, not to regain possession of the thing itself. Even if the goods be returned by the wrongdoer, and are accepted by the owner, after the action is brought, damages, nominal or actual, may be recovered. There is a class of cases when, in trespass or trover, the defendant may mitigate the damages by a timely and proper return of the property. The rules which govern in such cases seem to be that where the wrong lacks the element of willfulness —has been committed in good faith—the court, in its discretion, may order a return, upon timely application by the defendant, accompanied by an offer to pay all costs, and a showing that no real injury will have been suffered by the plaintiff when possession is restored. The right of action is not defeated by the order of the court, but damages are mitigated. The subject and the authorities are fully reviewed in *Hart* v. *Skinner,* 16 Vt. 138. See, also, *Reynolds*

v. *Shuler,* 5 Cow. 323, and *Churchill* v. *Welsh,* 47 Wis. 39, (1 N. W. Rep. 398.) We have no such case now before us.

The point is made upon this appeal that it was incumbent upon the plaintiffs to produce and surrender up the stock or share certificates before they could recover; *Joslyn* v. *St. Paul Distilling Co.,* 44 Minn. 183, (46 N. W. Rep. 337,) being the principal authority relied on. But plaintiffs are not asking, as was demanded there, for the cancellation of stock certificates, the transfer of such stock upon the books of the association, and the issuance of new certificates. Nor were the conclusions reached in the *Joslyn Case* adopted on any view of the negotiability of stock certificates, but on general principles appertaining to the doctrine of estoppel. The transfer or assignment of the certificates here involved could give the purchaser no greater rights, as against the association, than the assignors had. *Hammond* v. *Hastings,* 134 U. S. 401, (10 Sup. Ct. Rep. 727.)

The remaining points made by counsel for appellant need not be specifically referred to.

Judgment affirmed.

(Opinion published 56 N. W. Rep. 95.)

Petition for reargument denied October 20, 1893.