W. B. COLBY v. THE W. W. KIMBALL COMPANY, Appellant.

**Conversion:** CHATTEL MORTGAGE: *Sale.*  Where a chattel mortgage authorizes the mortgagee, on default, to take possession and sell the chattel at public sale, a sale by the mortgagee at a private sale is a conversion.

TENDER BACK: *Damages.*  Damages for the conversion of a piano by selling the same at a private sale, in violation of the terms of the mortgage under which it was seized, requiring a public sale, are not reduced to a more nominal sum by a tender of the piano to the mortgagor on condition of payment of the amount due under the mortgage, when the conversion was intentional, and with knowledge of all material facts.

**Opinion Evidence:** COMPETENCY: *Value.*  A witness may give her opinion as to the value of a piano, although she has not been expressly examined with respect to her knowledge of values, where she has so testified as to show that she knows something of them, especially, in the absence of objections specifically asserting the competency of the *witness.*

*Same.*  A piano salesman, who has been selling pianos for five or six years, may testify as to the value of a piano sold by him more than two years prior to the time to which the inquiry relates, although he did not see it at the latter time, where its condition at that time has been shown.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

MONDAY, OCTOBER 19, 1896.

ACTION at law to recover for the conversion of specific personal property.   There was a trial by jury, and a verdict and judgment for the plaintiff.   The defendant appeals.—*Affirmed.*

*Bishop, Bowen & Fleming* and *D. F. Callender* for appellant.

*Dowell & Parrish* for appellee.

ROBINSON, J.—On the fifteenth day of May, 1891, the plaintiff purchased of the defendant a piano, for the agreed price of three hundred and twenty-five dollars. Of that sum, sixty-five dollars were paid by the delivery of an organ, eighty-seven dollars and fifty cents were to be paid in board and room, and the remainder was to be paid in monthly installments of ten dollars each, with interest at the rate of eight per cent. per annum. The agreement in regard to the payments is in writing, and contains the following: "To secure the payment of the sums of money in the foregoing note contracted to be paid, * * * the undersigned hereby mortgages to said W. W. Kimball Company one piano, * * * being the property sold by said W. W. Kimball Company to me, in part payment for which the foregoing note is given. And it is agreed that in case default is made in the payment of any installment of said note at the time and place therein mentioned, * * * or whenever the said W. W. Kimball Company, or its assignees, may so elect, the said W. W. Kimball Co., its agents, or assigns, shall have the right to take possession of said property, wherever found, and proceed to sell the same at public sale, as by statute in such case provided, and apply the proceeds of said sale to the payment of the sums mentioned in the foregoing note then remaining unpaid, whether the same be due or not, * * *." In September, 1893, after the plaintiff had paid on the piano, sums which amounted in the aggregate to two hundred and six dollars and sixty-four cents, the defendant took possession of the piano under the mortgage, and a short time thereafter

sold it at private sale, realizing therefrom, after the payment of expenses, the sum of one hundred and thirty-eight dollars. This action is brought to recover the value of the piano.

The defendant admits the taking of the piano, but avers that it was so taken with the consent of the plaintiff, and has ever since been held by virtue of the contract of sale; that at the request of the plaintiff, the piano was held without proceeding to advertise a sale, for the purpose of giving the plaintiff an opportunity to pay the indebtedness and resume possession of the piano; that at the same time it was agreed that if the plaintiff could not, within a reasonable time, pay the balance due, the defendant should have the right to dispose of the piano in such a manner as it might see fit, and apply the proceeds on the amont due; that the defendant is now ready and willing to return the piano to the plaintiff upon receiving the amount due from her. The defendant, in a counter-claim, demands judgment for the sum of one hundred and fifty dollars. The verdict and judgment in favor of the plaintiff was for the sum of one hundred and four dollars, exclusive of costs.

I. The plaintiff was asked to state the value of the piano when it was taken from her. The question was objected to as "incompetent and immaterial, and the witness is not competent to testify of values." The objection was overruled, and, we think, properly so. The answer called for by the question, was both competent and material, and it was not shown that the witness was incompetent to testify. The objection was not made on the ground that her competency had not been shown. Moreover, although she had not been examined with respect to her knowledge of values, she had so testified as to show that she knew something of them. Her testimony in regard to the value of the piano in

controversy was properly admitted. That is true of the testimony of a witness named Yegge. He was a piano salesman, and had been selling pianos for five or six years. In fact, he sold to the plaintiff the piano in question. He did not see it at the time it was taken, but its condition at that time had been shown, and his testimony was admissible.

II. After the piano had been taken from the plaintiff and sold as stated, the defendant in some manner procured it, and has since held possession of it. The defendant attempted to show that, after it had so recovered possession of the piano, one of its employes, Mr. Sands, had a conversation with plaintiff, in which she was informed that the piano was again in the possession of the defendant, and could be redeemed by her at any time that she would arrange to pay the balance due. The court sustained objections to the evidence which was designed to prove that claim, and of that ruling, and of the giving of portions of the charge which were in harmony with it, the defendant complains. The contract of foreclosure, it will be noticed, provided that, if the piano was taken and sold to pay the purchase price, the sale should be public, and it is shown beyond question, that the piano was actually sold by the defendant at a private sale. The questions which the ruling last stated, and the giving of the charge present are (1) whether there was a conversion of the piano by private sale; and (2) whether, if there was a conversion, the plaintiff's right of recovery was made merely nominal by the tender of the piano, after the conversion, on condition that the amount due as provided in the contract should be paid. The first question must be answered in the affirmative. The right of the defendant to sell was prescribed by the mortgage, and it was

the duty of the defendant to follow its provisions. The private sale was the assertion of a power not given by the mortgage, to the exclusion, and in defiance of the right of the plaintiff to redeem, and insist upon a public sale, which amounted to a conversion of the property. See *Campbell v. Wheeler*, 69 Iowa, 588 (29 N. W. Rep. 613); *Howery v. Hoover*, 96 Iowa, 581 (66 N. W. Rep. 772); *Bolling v. Kerby*, 90 Ala. 215 (7 South. Rep. 914 and 24 Am. St. Rep. 789, note); Cooley, Torts, 448. The second question is more difficult, but must be answered in the negative. Some claim is made in argument to the effect, that the sale was made by an employe of the defendant, under a mistake as to his right to make it, and that the defendant did not authorize or ratify the sale, and should be permitted to correct the error and return the property. But we do not find anything in the record to justify that claim. The sale must be regarded as the deliberate act of the defendant, made with full knowledge of the rights of the plaintiff, and with the purpose of terminating her right to the property. In this respect, the case differs widely from that of *Dolittle v. Shaw*, 92 Iowa, 348 (60 N. W. Rep. 621), in which it appeared that a person had procured a team to drive from Delhi to Manchester, in this state; that he drove it to Manchester, and in addition, several miles into the country, and back. It was held that there was nothing to show that the hirer of the team intended to appropriate it to his own use, nor that he did so appropriate it, or exercise acts of dominion over it inconsistent with the rights of the owner. This case is also unlike those cases where there is a technical conversion only, as where the act of conversion was the result of a mistake, or where the custodian of property refuses to deliver it to the person entitled to possess it in consequence of conflicting claims, and doubts in regard to the duty of the custodian. See

*Churchill v. Welsh*, 47 Wis. 40 (1 N. W. Rep. 398), and cases therein cited. The conversion in this case having been intentional, with knowledge of all the material facts, it fixed the rights and liabilities of the parties in interest, and gave to the plaintiff a complete cause of action, which could not be defeated by the recovery of the piano by the defendant, and the tender of it to her. *Carpenter v. Association* (Minn.) (56 N. W. Rep. 95); *Brewster v. Silliman*, 38 N. Y. 423; 4 Am. & Eng. Enc. Law, 125. The plaintiff, having refused to accept the tender, is entitled to recover the damages which she sustained by the wrongful conversion, or so much as the value of the piano exceeded the unpaid part of the purchase price. The judgment of the district court is AFFIRMED.