[No. 9400.    Department Two.    September 13, 1911.]

# J. Conaway, *Respondent,* v. Co-Operative Homebuilders, *Appellant.*[1]

Action—Nature—Legal or Equitable—Building Associations. An action against a building association to recover damages for fraud in the issuance of its contracts, although framed as sounding in law, is one of equitable cognizance, where its essence was to relieve against a forfeiture of contracts and to recover money paid thereunder, on the ground of fraud in the inception of the contracts and in their performance.

Assignments—Chose in Action—Actions Assignable—Fraud— Rights of Assignee. The right to relief against the forfeiture of building association contracts and to recover money paid thereunder on the ground of fraud in their inception and performance is assignable, under Rem. & Bal. Code, § 191, authorizing the assignee of a "chose in action" to maintain an action thereon in his own name; since a chose in action is a right of action *ex contractu,* or for tort connected with a contract, which includes fraud by which money or property was obtained.

Assignments — Actions — Parties Plaintiff. The assignee of claims or demands in which the assignor still retains an interest may maintain an action thereon in his own name, under Rem. & Bal. Code, § 191.

Building and Loan Associations—Fraud—Actions—Parties Defendant. In an action by contract holders to recover damages from a building association for fraud in connection with the contracts, other contract holders are not necessary parties to the action, where no receivership is sought, but only a personal judgment against the association is asked.

Same — Actions — Contract Holders — Condition Precedent. Where a building association has forfeited contracts and deprived the holders of all standing in the association, the holders may sue to recover the money paid through fraudulent representations without first offering to surrender the contracts, where demand was first made for the money and refused.

Equity—Defenses—Laches—Limitations. An action in equity is not barred by laches by lapse of time short of the statute of limitations, where the defendant has in no manner altered its position or been otherwise injured by the delay.

[1]Reported in 117 Pac. 716.

BUILDING AND LOAN ASSOCIATIONS—CONTRACTS—CONSTRUCTION—
BREACH. A building association contract confers more than a mere
option, and imposes the duty to make a *bona fide* effort to secure
substitute contract holders for forfeited contracts, where it provides
that the association may, in case of defaults, cancel contracts and
make another contract of the same number with another person, and
providing for a certain distribution among contract holders of sums
paid into the credit of such contract number; hence the association
would be liable to contract holders of a series the maturity of whose
contracts were delayed by a breach of the clause and by contracts
designated by half, fourth, and three-fourth numbers inserted in the
series.

SAME—LIMITATION OF ACTIONS—RELIEF ON GROUND OF FRAUD. An
action for relief against the forfeiture of building association con-
tracts and to recover money paid, on the ground of false representa-
tions in the inception of the contracts and breach in performance,
is barred by the three-year statute of limitations for actions for re-
lief on the ground of fraud, and the discovery of the fraud is prop-
erly fixed by the time when the holders ceased to pay on their con-
tracts.

LIMITATION OF ACTIONS—FRAUD—DISCOVERY—BURDEN OF PROOF.
In an action for relief on the ground of fraud, it is incumbent on
the plaintiffs to show that the fraud was not discovered within three
years next prior to the commencement of the action.

Cross-appeals from a judgment of the superior court for
King county, Frater, J., entered October 20, 1910, in favor
of the plaintiff, after a trial on the merits before the court
without a jury, in an action for equitable relief. Modified.

*Fred'k R. Burch,* for appellant, contended, among other
things, that the cause of action was not assignable. 4 Cyc.
pp. 23, 24, 25; 1 Parsons, Contracts, 226; 1 Perry, Trusts,
§ 69; Bigelow, Fraud, p. 214; 21 Ency. Plead. & Prac.,
p. 351, § 4; *Zabriskie v. Smith,* 13 N. Y. 322, 64 Am. Dec.
551; *Slauson v. Schwabacher Bros. & Co.,* 4 Wash. 783, 31
Pac. 329, 31 Am. St. 948; *Whitney v. Kelley,* 94 Cal. 146,
29 Pac. 624, 28 Am. St. 106, 15 L. R. A. 813; *Sanborn v.
Doe,* 92 Cal. 152, 28 Pac. 105, 27 Am. St. 101; *Cross v.
Sacramento Sav. Bank,* 66 Cal. 462, 6 Pac. 94; *Marshall
v. Means,* 12 Ga. 61, 56 Am. Dec. 444; *Stebbins v. Dean,*
82 Mich. 385, 46 N. W. 778; *Brush v. Sweet,* 38 Mich. 574;

*Lewis v. Rice,* 61 Mich. 97, 27 N. W. 867; *Chase v. Bough-ton,* 93 Mich. 285, 54 N. W. 44; *Dayton v. Fargo,* 45 Mich. 153, 7 N. W. 758; *Dickinson v. Seaver,* 44 Mich. 624, 7 N. W. 182; *Smith v. Thompson,* 94 Mich. 381, 54 N. W. 168; *Hazeltine v. Smith,* 154 Mo. 404, 55 S. W. 633; *Farwell Co. v. Wolf,* 96 Wis. 10, 70 N. W. 289, 71 N. W. 109, 65 Am. St. 22, 37 L. R. A. 138; *Killen v. Barnes,* 106 Wis. 546, 82 N. W. 536; *Norton v. Tuttle,* 60 Ill. 130; *Illinois Land & Loan Co. v. Speyer,* 138 Ill. 137, 27 N. E. 931; *Morrison v. Deaderick,* 10 Humph. (Tenn.) 341; *Graham v. Railroad Co.,* 102 U. S. 148; *French v. Shotwell,* 5 Johns. (N. Y. Ch.) 555; *Gruber v. Baker,* 20 Nev. 453, 23 Pac. 858. The action was barred by laches. *Gay v. Havermale,* 30 Wash. 622, 71 Pac. 190; *Chezum v. McBride,* 21 Wash. 558, 58 Pac. 1067; *Wright v. Tacoma Gas & Elec. Light Co.,* 53 Wash. 262, 101 Pac. 865; *Kline v. Galland,* 53 Wash. 504, 102 Pac. 440; *Kuhn v. Mason,* 24 Wash. 94, 64 Pac. 182; *Ferrell v. Lord,* 43 Wash. 667, 86 Pac. 1060; *Romaine v. Excelsior Carbide & Gas Machine Co.,* 54 Wash. 41, 103 Pac. 32; *Eldridge v. Young America Min. etc. Co.,* 27 Wash. 297, 67 Pac. 703.

*F. C. Kapp, Elias A. Wright,* and *Chas. H. Miller,* for respondent.

ELLIS, J.—The appellant, defendant below, is a corporation organized under the laws of California. It is engaged in business in the state of Washington such that this court, in *State ex rel. Atkinson v. Co-Operative Homebuilders,* 47 Wash. 235, 91 Pac. 953, held it to be doing the business of a building and loan association, within the meaning of a statute of this state. Laws 1890, p. 56 *et seq.;* Rem. & Bal. Code, §§ 3601, 3638. In that case it was determined that the corporation must comply with this law or cease operations here. It seems to be conceded that it has, since that decision, and some time in 1908, complied with our law. This action was brought by respondent on some eighteen causes of action as-

signed to him by persons who had previously been contract holders in Western Home Building Association, a Washington corporation, the business and contracts of which were taken over by the appellant. The appellant had, in July, 1902, in lieu of these contracts, issued to these holders contracts of its own known as its 'D' series. The material parts of this form of contract are set out in the opinion above referred to, hence need not be repeated here.

The allegations of the complaint as to the different causes of action are practically the same. It alleges numerous false representations made by appellant to respondent's assignors as inducements to them to take these contracts, among others, that the Western Home Building Association would not be able to mature the contracts; that the appellant, being solvent and well managed, would mature and carry them out in good faith; that its contracts of 'D' series would work out in practice; that it was authorized to do business in this state; and that the appellant knew these representations to be false. The complaint alleges that in July, 1902, the appellant had not complied with the laws so as to be entitled to do business in this state, and did not attempt to do so until in the winter of 1908, and recites the bringing of the action by the state and the decision therein. It then alleges:

"That is was at no time the intention of the defendant to perform its contracts entered into with said assignor in good faith, but that the defendant induced said assignor and other citizens of this state to enter into contracts with it solely for the purpose of depriving them of their money paid to it under said contracts by attempted forfeitures thereof when said contract holders should discover the fraudulent representations made to them and should refuse to make further payments; that it has refused, and still refuses, to mature such contracts when there is an accumulation of $75 in the Home Maturity Fund, but will not mature such contracts until there is an accumulation of $1,000; that it refuses to make the required loans when said contracts do mature, on one pretext or another; that it has ceased to solicit any contracts of the said 'D' series in this state or elsewhere, and has thus made

it impossible for it to mature the outstanding, unmatured contracts in this series held by citizens of this state; that the business and affairs of said defendant have been and are mismanaged by the officers thereof as herein set forth, and conducted in such a way as to destroy public confidence, thus rendering it impossible for it to secure new contract holders in this state or elsewhere, and that the scheme or plan upon which said contracts of the 'D' series were issued and entered into by it were incapable of successfully working out, even if the affairs of the defendant were honestly and efficiently managed; that it has persistently and wrongfully refused to sell any of the forfeited 'D' contracts in accordance with the provisions therein, but has retained all the money thus forfeited for itself in violation of section 28 of the laws of this state, relating to building and loan associations; that it has attempted to forfeit contracts with citizens of this state at a time when it was not authorized to do business here, thus depriving it of the means of maturing its said contracts; and that instead of proceeding to act as a bona fide building and loan association in this state, its plan of operation here was simply a scheme to acquire the property of citizens of this state by alleged forfeitures of money paid to it by them, and to make loans only to the officers of said company and their friends."

The complaint further alleges that the particular assignors had become holders of certain designated 'D' contracts, and after having made certain payments thereon, learned of the things therein before alleged; that thereby they were damaged in the amounts paid in by them, and that the claim had been assigned to the respondent; alleges demand and refusal to pay; and prays that appellant be enjoined from removing its assets from the state, for a receiver, to wind up the affairs of appellant, and for judgment for the sums so paid, with interest, and for further relief. The allegations of the complaint looking to the procurement of an injunction and the appointment of a receiver were stricken on motion. A demurrer was interposed on the ground that there was no legal capacity to sue; defect of parties defendant; improper uniting of actions; lack of sufficient facts; and that the action

was not commenced within the time limited by law. The demurrer was overruled, and an answer was filed denying most of the allegations of the complaint, and setting up as affirmative defenses, that the change of terms of maturity on the contracts was in the interest of the contract holders; that these assignors had defaulted and their contracts had been forfeited; matter of estoppel; that respondent was not the real party in interest; that appellant had disbursed the funds pursuant to the contracts; and that the action was barred by the statute of limitations. The reply put in issue the affirmative matters of defense. The cause was tried to the court, and judgment rendered on the 5th, 16th, and 18th causes of action in the aggregate sum of $897.30. The court dismissed the other causes as barred by the statute. Appellant appeals from the money judgment, and respondent prosecutes a cross-appeal from the judgment of dismissal. Some seventeen pages of the statement of facts are taken up by a discussion between the court and counsel as to whether this is an action at law or a suit in equity, and no very definite conclusion seems to have been reached by any one. While the complaint was evidently framed with an intent to make the action one at law sounding in damages, it is, in its essence, an action to relieve against a forfeiture and to recover the money paid, on the ground of fraud in the inception of the contracts and in their performance. As such the action was cognizable in equity.

Appellant's dominant contention is that the respondent had no legal capacity to sue, that the cause of action was not assignable, and that respondent is not the real party in interest. Rem. & Bal. Code, § 191, reads as follows:

"Any assignee or assignees of any judgment bond, specialty, book account, or other chose in action, for the payment of money, by assignment in writing, signed by the person authorized to make the same, may, by virtue of such assignment, sue and maintain an action or actions in his or her name, against the obligor or obligors, debtor or debtors,

therein named, notwithstanding the assignor may have an interest in the thing assigned. . . ."

The term chose in action is defined as follows:

"A right to receive or recover a debt, demand, or damages on a cause of action *ex contractu*, or for a tort connected with contract, but which cannot be made available without recourse to an action." Black's Law Dictionary (2d ed.), p. 198. See, also, 32 Cyc. 669.

It is manifest that the cause of action here falls within the above definition, and hence is assignable under the statute. Moreover, it is the established rule in this state that a cause of action which survives to the personal representative is assignable and can be enforced in the name of the assignee. *Slauson v. Schwabacher Bros. & Co.*, 4 Wash. 783, 31 Pac. 329, 31 Am. St. 948; Pomeroy, Code Remedies (3d ed.), § 147.

Appellant argues that fraud is not an assignable commodity, and that the assignment of a bare right to file a bill in equity for fraud or deceit committed on the assignor is void. Many authorities are cited which state the rule thus broadly, but on analysis of the cases we find that the rule, in its sound application, extends little further than to hold that the mere purchase of property will not give the purchaser a right to sue for damages by reason of fraud or deceit theretofore practiced on the seller in connection with the thing purchased. Some of the authorities go to the extent claimed by appellant, but we cannot follow them in view of the statute expressly making choses in action assignable. Pomeroy, commenting upon the doctrine of assignability of claims founded in fraud or deceit, uses the following language, which we think is in accord with both reason and authority:

"The same doctrine is applied to claims growing out of fraud and false representations, if the deceit is practised in some transaction relating to the buying, selling, or other dealing with real or personal property, or if it be made in a contract by which real or personal property is to be acquired or

transferred, or if it be the basis of or inducement to any act which results in a change of right relating to property. Of course, any fraud or false representation which merely affected personal relations, or was the basis or occasion of any change in purely personal status or condition, independent of and not connected with property, would not give rise to a cause of action which survives and is assignable. In accordance with the rule thus stated, a demand for damages arising from false representations, or from fraud of any kind, in the sale and purchase of land, would survive, and may be assigned; and the same is true in respect to a sale of goods. And a claim to recover money or other personal property which the defendant had obtained or procured to be transferred to him by fraud is assignable." Pomeroy, Code Remedies (3d ed.), § 150.

See, also, *Metropolitan Life Ins. Co. v. Fuller*, 61 Conn. 252, 23 Atl. 193, 29 Am. St. 196; *Dean v. Chandler*, 44 Mo. App. 338; *Peckham v. Smith*, 9 How. Pr. (N. Y.) 436; *Johnson v. Shuey*, 40 Wash. 22, 82 Pac. 123.

It is urged that the respondent was only a nominal assignee, and hence was not the real party in interest. The evidence shows that, by the assignments, he took not only the full legal title, but also a beneficial interest to the extent of one-tenth of the claims, and for the balance he must account to the assignors and their attorneys. By the terms of the statute (Rem. & Bal. Code, § 191), the assignee is expressly permitted to sue in his own name though the assignor retains an interest in the thing assigned. *Von Tobel v. Stetson & Post Mill Co.*, 32 Wash. 683, 73 Pac. 788; *McDaniel v. Pressler*, 3 Wash. 636, 29 Pac. 209; *Riddell v. Prichard*, 12 Wash. 601, 41 Pac. 605; 4 Cyc. 99, 100. We are of opinion that the claims were assignable and that respondent was entitled to sue in his own name.

Appellant contends that, because the contract made others executing similar contracts parties, all other contract holders should have been made defendants; citing, *Frost v. Puget Sound Realty Associates*, 57 Wash. 629, 107 Pac. 1029. In that case the appointment of a receiver was sought pending

suit to dissolve the corporation, and, of course, every holder of an income profit-sharing bond of the corporation had a direct interest in the result. In the case here, the parts of the complaint seeking the appointment of a receiver to wind up the affairs of the corporation were stricken and no receiver was appointed. The complaint so modified seeks in no manner to interfere with the management of the general affairs of the corporation. No relief is sought against any other contract holder, nor can the judgment in any way affect their rights. The judgment is a personal judgment against the appellant. Other contract holders were not necessary parties.

It is urged that the complaint does not state facts sufficient to constitute a cause of action; the principal contentions under this head being that there was no offer to surrender the various contracts and demand a return of the money. The demand was alleged and proved, and an offer to surrender the contracts was unnecessary. The appellant claims to have forfeited the contracts. Whether rightfully or wrongfully, it had deprived the original owners of these contracts of their ownership and of all standing in the association. The contract holders and their assignee may meet the appellant upon the ground it has elected to occupy. It has treated the contracts as already rescinded. The respondent may acquiesce and sue for the money paid thereon. *Carpenter v. American Building & Loan Ass'n*, 54 Minn. 403, 56 N. W. 95, 40 Am. St. 345; *Allen v. American Building & Loan Ass'n*, 49 Minn. 544, 52 N. W. 144, 32 Am. St. 574; *McAlarney v. Supreme Council A. L. H.*, 131 Fed. 538.

It is also insisted that the claims are stale and the action is barred by laches. But the doctrine of laches is grounded upon equitable estoppel. There is nothing, either in the pleadings or proofs, to show that the appellant has in any manner altered its position, or been otherwise injured because of the delay. In such case an action in equity is not barred by any lapse of time short of that fixed by the analogous statute of limitations. *Brissell v. Knapp*, 155 Fed. 809, 811;

*Sabre v. United Traction & Elec. Co.,* 156 Fed. 79; *McAlarney v. Supreme Council A. L. H., supra.*

The complaint states a cause of action, and the allegations of the complaint were sustained by the evidence. The representations as inducements to the taking of the contracts were established. It is admitted that appellant required the accumulation of $1,000 before it would mature a contract and make a loan, while the contract provided that contracts should be matured in their order whenever there was $75 in the maturity fund. It is admitted that the appellant has long since ceased to solicit or write contracts of the 'D' series. It is evident, from the record, that the appellant, on declaring the contracts forfeited, made no effort to comply with paragraph 10 of the contract, which reads as follows:

"If the second party fails or refuses to pay any monthly payment within thirty days after the same shall have become due, before he shall have obtained the use or advancement of the money provided for herein, then the first party may cancel this contract, and the same shall become null and void and the first party may make another contract, of the same number, with another person; and when there shall have accrued to the credit of this contract number, in the Home Maturity Fund, a sum equal to the amount so paid in by said second party upon this contract, the same shall be disbursed as follows: One-half to the contract holder, one-fourth to the Equalization Fund and one-fourth to the Expense Fund."

This paragraph confers more than a mere option on the appellant. It imposes a duty to make a *bona fide* effort to secure substitute contract holders for forfeited contracts. The violation of a somewhat similar provision has been held sufficient ground for proceeding against the corporation as for a conversion. *Carpenter v. American Building & Loan Ass'n* and *Allen v. American Building & Loan Ass'n, supra.* It is also shown that contracts designated by half, fourth, and three-fourths numbers were inserted in the series, thus delaying maturity of the regular numbered contracts. Appellant offered nothing in explanation of this singular course.

The court applied the three-year statute of limitations, evidently holding that the gravamen of the action was fraud, and fixing the discovery of the fraud at the time when the respective assignors of respondent ceased to pay on their contracts. In this the court was clearly right.

On his cross-appeal, the respondent contends that the claims should not have been held barred short of the six-year period of limitation, because the action was based upon written contracts. What we have said as to the nature of the action effectually disposes of this contention.

The court, however, erred in holding the third cause of action barred. In that instance the assignor paid his dues up to October 25, 1906. The action was commenced in November, 1908. Recovery should have been allowed on this cause upon the same basis as on the three causes of action upon which judgment was given. The amount paid upon the contracts referred to in this cause of action was $321. The judgment should be modified to include this additional sum.

Respondent contends that on certain other contracts, where the evidence shows the last payment less than a month prior to December, 1905, the court should have assumed the fraud was not discovered till the next payment became due. This cannot be assumed. It was incumbent upon the respondent to show that the fraud was not discovered within the three years. It is also contended that the withdrawal value of all of the contracts should have been allowed under Rem. & Bal. Code, §§ 3627, 3628. Such relief, however, was not within the issues.

The action is remanded with direction to modify the judgment so as to include the amount due on the third cause of action. The respondent, Conaway, will recover his costs on this appeal.

DUNBAR, C. J., CROW, MORRIS, and CHADWICK, JJ., concur.