**Elaine ROSENBERG and Micheline Nanette Sinclair, Plaintiffs,**

v.

**SEATTLE ART MUSEUM, a Washington non-profit corporation, Defendant and Third Party Plaintiff,**

v.

**Knoedler–Modarco, Inc., a Delaware corporation d/b/a Knoedler & Co., Third Party Defendant.**

No. C98–1073L.

United States District Court, W.D. Washington, at Seattle.

March 22, 2000.

Stuart R. Dunwoody, John Alan Reed, Jessica L Goldman, Davis Wright Tremaine LLP, Seattle, WA, for Seattle Art Museum.

Timothy G. Fielden, Scott L Fredericksen, Karyn S Johnson, Stoel Rives LLP, Seattle, WA, Sara Goldberg, Lewis R Clayton, Daniel Leffell, Marc Falcone, Steven Rawlings, Daniel H Levi, Paul Weiss Rifkind Wharton & Garrison, New York, NY, for Knoedler-Modardo, Inc.

## ORDER GRANTING RECONSIDERATION AND VACATING ORDER GRANTING SUMMARY JUDGMENT AND DISMISSAL

LASNIK, District Judge.

This matter comes before the Court on third party plaintiff Seattle Art Museum's ("SAM") Motion for Reconsideration of the Court's order granting partial summary judgment and dismissal to third party defendant Knoedler–Modarco, Inc. ("Knoedler"). The Court requested a response from Knoedler pursuant to an Order dated November 4, 1999. Having considered the parties' briefs and supporting materials, and oral argument, the Court grants SAM's Motion for Reconsideration and vacates its prior Order Granting Summary Judgment And Dismissal.

Consistent with Rule 59(c), the Court ordinarily will not grant a motion for reconsideration "unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange Street Partners v. Arnold,* 179 F.3d 656, 665 (9th Cir.1999) (citing *School Dist. No. 1J v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir.1993)). Our local rule 7(e) disfavors motions for reconsideration and says "[t]he court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence."

SAM argues that the Court made three errors warranting reconsideration. First, SAM argues, the Court "failed to consider the language of the governing will and trust instrument" by which *L'Odalisque* was bequeathed to SAM. Second, SAM argues that the Court misunderstood the role and enforceability of "agreements pursuant to RCW 11.96.170 in the administration of wills and trusts." Third, SAM argues, the Court "lacked jurisdiction to overrule the conclusions reached in those agreements." A separate, fourth issue, concerns the assignment of the fraud claim executed by the Bloedel heirs after judgment was entered in this case.

**A. The Court's "fail[ure] to consider the language of the governing will and trust instrument"**

The "language of the governing will" provides that all of Mrs. Bloedel's "interest in" *L'Odalisque* was to be given to SAM. Similarly, the language of Mr. Bloedel's "trust instrument" provides that he gave "all of [his] interest in" *L'Odalisque* to SAM. Based upon this language, SAM makes the following argument: "These gifts of 'all' of their interest in the painting reflect the Bloedels' intention to give SAM

all their rights in *and arising from* the painting." SAM's Memo. Re: Mot. for Recon. at 3.

SAM's conclusory argument merely begs the important question: Does transferring one's "interest in" an object such as *L'Odalisque* also effectively transfer tort claims "arising from" the object? SAM cites no legal authority to suggest that it does, and in fact, the law in the State of Washington provides just the opposite—that transferring ownership of personal property does not thereby transfer a claim for fraud associated with the purchase of that property. *Conaway v. Co-Operative Home Builders,* 65 Wash. 39, 45, 117 P. 716 (1911).

SAM invites the Court to supply the non-existent "arising from" language to the will and trust documents. The Court declines SAM's invitation not because the Court failed to consider "the language of the governing will and trust instruments," but because the language does not say what SAM thinks it says. Thus, the Court finds no clear error on this point.

### B. The Court's "misunderst[anding]" and "misapprehension" of RCW 11.96.170

As the Court noted in its Order Granting Summary Judgment and Dismissal, RCW 11.96.170 is unavailing because the dispute sought to be resolved by the agreement among the Bloedel heirs has not arisen "in the administration of" the Bloedels' estates or trust. *See* RCW 11.96.070(1)(c). In this case, the only dispute—whether SAM has standing to assert the Bloedels' fraud claim—arose in a lawsuit in which the parties are the Rosenbergs, SAM, and Knoedler. The fact that SAM claims to have earlier received the Bloedels' fraud claim through a will or trust instrument does not turn this dispute into one arising in the administration of an estate. Having determined that SAM only received title to the painting, the administration of SAM's interest in the Bloedels' estate was complete upon transfer of

*L'Odalisque* to SAM. The fact that SAM later learned the Bloedels never held good title to their generous gift does not create a dispute in the administration of the Bloedels' estate.

Moreover, SAM misapprehends the force of an agreement under the statute, which provides that "parties to [a] dispute" may "agree as to a matter in dispute," and that if the agreement is filed with the superior court and not objected to, the agreement "will be equivalent to a final order *binding on all parties to the dispute*." RCW 11.96.170(1), (5) (emphasis added). SAM failed to quote the language from the statute clarifying that such agreements are meant to bind "parties to the dispute," which the section defines by reference to RCW 11.96.100(3)(a) and (b). Thus, if Knoedler is a party to the dispute under RCW 11.96.100(3)(a)(vii) (which includes any person "who has an interest in the subject of the particular proceeding"), then the agreement lacks force because Knoedler was not part of the agreement. If Knoedler is *not* a party to the dispute, then the agreement is not binding on Knoedler pursuant to RCW 11.96.170(1). Either way, the agreement is irrelevant as to the dispute before this Court.

Because the purported RCW 11.96.170 agreement did not resolve a dispute arising in the administration of an estate, and the agreement would not have the effect of a final order against Knoedler, the Court finds no misapprehension or misunderstanding of the agreement or the statute constituting "clear error."

### C. The Court's lack of jurisdiction to "overrule" the RCW 11.96.170 agreements

The Court did not, as SAM argues, "overrule" the agreement among Bloedel heirs. As discussed above, the dispute the agreement sought to resolve was not properly the subject of RCW 11.96.170, and the agreement was irrelevant to the dispute before the Court. Moreover, SAM cannot

argue that the agreement conclusively resolves the issue before the Court, and at the same time argue that this Court has no jurisdiction to assess the validity or applicability of the agreement. The abstention doctrine SAM has invoked "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation Distr. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In order to adjudicate Knoedler's Motion for Summary Judgment, the Court had a duty to examine the agreement under RCW 11.96.170. The Court necessarily, therefore, had jurisdiction to determine that the agreement was insufficient to confer standing on SAM.

### D. Assignment of Fraud Claim

After the Court granted summary judgment and dismissal to Knoedler, SAM obtained an assignment of the Bloedels' fraud claim from the Bloedel heirs ("the Assignment"). As the Court has discussed above, the heirs' agreement purporting to claim the Bloedels' intent was insufficient to alter the terms of the will and trust instruments. However, this agreement to assign the fraud claim effectively accomplishes what the heirs' prior agreement could not.

The Court is thus presented with difficult decision in light of new facts. On the facts as they existed at the time of the Court's summary judgment order, SAM was not legally entitled to assert the Bloedels' fraud claim. Now that the heirs have assigned the claim to SAM, however, SAM might seek to reassert that claim in a new action, in which case more litigation would undoubtedly ensue regarding res judicata issues. Similarly, SAM might seek relief from judgment pursuant to Rule 60 based upon this unusual factual development. If the heirs were to attempt to accomplish what SAM could not, Knoedler would undoubtedly argue that the Assignment precludes an action by them. Giving effect to what was supposed to be a final judgment would, ironically, give rise to more litigation on ancillary issues than would be necessary by going forward with the fraud claim.

The promise of further costly litigation on such issues appears to the Court to be an unnecessary result of SAM's poor timing. While a rigid consideration of this Motion for Reconsideration might suggest that the Court should throw up its hands and allow the judgment to stand, the Court believes that such a result would ultimately be more costly and less just to all of the parties.

■ It is not clear to the Court why SAM waited until judgment had been entered in this case to obtain the Assignment, which was arguably the easiest solution to its standing problem. Nonetheless, now that the Assignment has been made, the Court finds that, as a matter of equity, SAM should be permitted its day in Court so that this case may be disposed of on the merits. Because the Court recognizes that SAM's failure to obtain the Assignment of the fraud claim until after summary judgment has created unnecessary litigation costs for Knoedler, the Court will order SAM to pay Knoedler's costs and fees associated with the Motion for Reconsideration.

SAM suggests in its reply brief that there is only one conceivable result in this case: that SAM has standing to assert the Bloedels' fraud claim because all of the Bloedel heirs agree that the claim was bequeathed to SAM, and because the claim—which indisputably survived the Bloedels' deaths—must have been distributed to *"someone"*. Reply at 1 (emphasis in original). Of course, as the Court acknowledged in its Order Granting Final Judgment and Dismissal, the fraud claim *did* survive the Bloedels' deaths and was distributed to their heirs. Because SAM waited until *after* final judgment had been entered in this case to obtain the Assignment from the heirs, there are several conceivable results on this Motion for Reconsideration. The Court finds that the

most just and efficient path is to acknowledge that there are now new facts before the Court in light of the Assignment which do establish "other highly unusual circumstances warranting reconsideration." *School District No. 1J v. ACandS Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993).

ACCORDINGLY, it is hereby ORDERED that Seattle Art Museum's Motion for Reconsideration and To Vacate Judgment is GRANTED. It is further ORDERED that Seattle Art Museum shall pay Knoedler's costs and fees incurred as a result of the Motion for Reconsideration. Knoedler is ORDERED to submit a statement of such costs and fees to the Court within 30 days of the date of this order. The parties are further ORDERED to confer regarding a new trial date and case schedule and to submit a proposed revised schedule to the Court within ten days of the date of this order.

The Clerk of the Court is directed to send copies of this order to all counsel of record.