(No. 11738.—Appellate Court reversed; superior court affirmed.)

ARTHUR A. STILES, Appellant, *vs.* THE BOARD OF TRUSTEES OF POLICE PENSION FUND OF WEST CHICAGO PARK COMMISSIONERS, Appellee.

*Opinion filed December 19, 1917.*

1. PENSIONS—*test of right to a pension under the Park Police Pension act.* Under section 3 of the act providing for a park police pension fund the only conditions upon which the right to such pension depends are twenty years' service as policeman for the park board and ceasing to be in active service, and it is not material whether the applicant's service terminated voluntarily or by a discharge under civil service regulations.

2. SAME—*filing mandamus petition for re-instatement does not waive petitioner's right to pension.* The fact that a policeman who is seeking by *mandamus* to obtain a pension under the act relating to the park police pension fund has also filed a *mandamus* petition to compel his re-instatement as a policeman and the payment of his back salary does not waive his right to a pension unless the latter petition is allowed and he is restored to active service.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding.

A. D. GASH, for appellant.

JACOB C. LEBOSKY, and WILLIAM LEVINE, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Appellant filed in the superior court of Cook county his petition for a writ of *mandamus* against the Board of Trustees of the Police Pension Fund of the West Chicago Park Commissioners, (hereinafter called respondent,) to compel the respondent to grant the petitioner a pension as captain of police of the police force of the West Chicago Park Commissioners, and to compel the payment to him of the amount due as a pension from June 4, 1914. The petition

as finally amended sets up the organization of the board of
West Chicago Park Commissioners under different acts of
the General Assembly, and the creation by said board, un-
der said acts and an ordinance passed by the board, of the
office of captain of police, the election of the petitioner by
the board to that office, his appointment and oath as such
officer on June 29, 1911, and his performance of the duties
of said office until June 4, 1914, when he was suspended
until October 16, 1914, on which latter date he was dis-
charged as captain of police from the service of said board.
The petition also sets up the appointment of the respondent
under the act of February 19, 1913, providing for the cre-
ation of boards of trustees of police pension funds; that
the petitioner had served as a policeman for said commis-
sioners for more than eighteen years prior to June 29, 1911,
and that by reason of having served more than twenty years
on the police force of said commissioners he became en-
titled to a yearly pension of $900,—one-half the amount of
the salary attached to the rank of captain which he had
held,—and that he had demanded of the respondent pay-
ment of said pension, but that respondent has refused, and
still refuses, to comply with such demand; that the police
pension fund under the control of respondent is sufficiently
large for said board to comply with such demand; that
petitioner has never been convicted of any felony nor been
guilty of or charged with any felony; that he has never
become an habitual drunkard nor been charged with the
same; that he has never become a non-resident of the State
nor been charged with the same; that he was not discharged
from the police force of said commissioners because of con-
viction of a felony, being an habitual drunkard or a non-
resident of this State, and has not been charged by said
board or any of its officers, the civil service commission or
.civil service board with being guilty of any of said offenses.

The respondent filed an answer to the amended petition,
which was subsequently amended, setting up various mat-

ters by way of defense, only two of which are relied on. The first is, that all members of the police force to which the petitioner belonged are subject to the Civil Service act relating to parks, approved June 10, 1911; that on June 4, 1914, charges were preferred and filed against petitioner charging him with having entered a saloon while in the uniform of a police captain of the West Chicago Park Commissioners, and having on certain other specified days used vile epithets and profane and obscene language, and he was thereupon suspended from his employment without pay; that said charges were heard before the civil service board, and the finding of said board was on October 26, 1914, duly certified by the West Chicago Park Commissioners; that petitioner's removal from his employment as captain of police became effective June 4, 1914. The other defense set up in the answer is, that prior to the commencement of the *mandamus* suit the petitioner had filed in the circuit court of Cook county his petition for a writ of *mandamus* directed to the West Chicago Park Commissioners, in which petition he charged that the civil service board was without jurisdiction to hear the charges preferred against him and that its finding and approval were void and that the order removing him from the employment of the West Chicago Park Commissioners was void, and prayed that said commissioners place his name upon the roster of police officers as police captain and that he receive back salary from the date he was discharged; that from the time of the filing of the petition the petitioner elected to regard himself still in the employ of the West Chicago Park Commissioners, and to regard that his services as captain of police and as a member of the police force of such commissioners had never ceased and he had never resigned from said office.

A demurrer was sustained to the amended answer, and the respondent having elected to stand by the same, the writ of *mandamus* was issued as prayed, directed to respondent, commanding it to grant appellant a pension as captain of

police at the rate of $900 per annum from the date of his suspension, June 4, 1914. On appeal to the Appellate Court this order was reversed. A certificate of importance and an appeal were granted by that court, pursuant to which an appeal was perfected to this court.

Appellant bases his right to a pension on the provisions of the act of the General Assembly providing for the setting apart, formation, administration and disbursement of a park police pension fund, section 3 of which act provides, in substance, that when any person, at the time of the taking effect of this act or thereafter, shall have been duly appointed and have served for a period of twenty years or more upon the regularly constituted police force of a board of park commissioners subject to the provisions of this act, or where the combined years of service of any person upon the police force of such board shall aggregate twenty years or more, said board shall order and direct that such person, after his services on such police force shall have ceased, shall be paid a yearly pension equal to one-half the amount of salary attached to the rank which he held on said police force for one year immediately prior to the time of such retirement. (Hurd's Stat. 1916, p. 1929.) Section 6 of the act provides, among other things, as follows: "Whenever any policeman who shall have received any benefit under this act, shall be convicted of felony or shall become an habitual drunkard or a non-resident of the United States, * * * then said board shall order that such pension allowance as may have been granted to such policeman shall cease and determine, and such policeman shall receive no further pension allowance or benefit under this act." These are the only two sections of the act which have any bearing on the principal question involved in this case as to who is entitled to a pension under the act and when such pension allowance ceases for misconduct.

*People* v. *French,* 108 N. Y. 105, and *State* v. *Trustees,* 123 Wis. 245, are relied upon by counsel for appellee. In

each of these cases the statute involved was different from the one under consideration. In the New York case the Pension law provided that any member of the police force who shall have served for twenty years or more, "upon his own application in writing, * * * shall, by resolution adopted by a majority vote of the full board, be placed on the roll of the police pension fund." The court held that the mere filing of such application by a member of the police force did not dissolve his connection with it, but that until the resolution referred to in the statute was adopted the applicant remained a policeman, subject to dismissal by the board for improper conduct, and if dismissed for gross misconduct was not entitled to a pension. The Wisconsin case involved a provision of the Pension law providing for retirement of members of the police department for injuries received in the performance of their duties. It was held that where a policeman was injured so as to disable him from duty, and thereafter he was removed from the force by the chief of police acting under authority of a city charter, he was not eligible to retirement to the pension list, as such retirement cannot take place unless the candidate for retirement is a policeman *in præsenti.* In each case the decision by the court was based on the language of the statute involved, and the decision in this case must be based on the Illinois statute. Section 3 of our Pension act provides that when any person shall have been duly appointed and have served for a period of twenty years or more upon the regu-. larly constituted police force, or when the combined years of service of any person upon the police force of such board shall aggregate twenty years or more, said board shall order and direct that such person, after his services on such police force shall have ceased, shall be paid a yearly pension. In short, the legislature has seen fit to provide as the only condition to receiving a pension twenty years' service and ceasing to be in active service.

Appellant was a duly appointed policeman on the force employed by the West Chicago Park Commissioners under authority of law. He served more than twenty years on that force. His services ceased. Under the terms of the Pension law above set out he is entitled to a pension. Said West Chicago Park board is under the Civil Service law and selects the members of its police force from those submitted according to that law. Such policemen are subject to suspension and discharge under the same law. There is nothing in that law to which our attention has been called that has anything to do with the right of appellant to a pension. The civil service board of the West Chicago Park Commissioners has certain duties to perform and a certain amount of authority over the hiring of policemen and discharging them. It has nothing to do, however, with the Pension law, and that law and the rights and benefits which accrue thereunder are entirely separate and distinct and have nothing to do with the Civil Service law. The right of appellant to a pension depends entirely and altogether upon the terms of the act providing for such pension. Not all pension laws are alike, and the sole question in any case is whether the person applying for a pension thereunder comes within its provisions. Where the language of the statute is unambiguous there is no necessity for construction and courts cannot change the clear language of a statute. (*State Board of Health* v. *Ross,* 191 Ill. 87; *People* v. *Rose,* 174 id. 310; *St. Louis and Cairo Railroad Co.* v. *Postal Telegraph Co.* 173 id. 508.) The principles enunciated in those cases particularly apply to pension laws. We have repeatedly held that pensions are in the nature of bounties of the government, which it has the right to give, withhold, distribute or recall, at its discretion; that the pensioner has no vested right in a pension, and the legislature has full power to enact such laws and direct how the fund shall be raised and direct to whom it shall be paid. (*Eddy* v. *Morgan,* 216 Ill. 437; *Pecoy* v. *City of Chicago,* 265 id. 78;

281 — 41

*Ryan* v. *Foreman,* 262 id. 175.) The same rule was first announced and has been uniformly followed by the Federal courts. (*Walton* v. *Cotton,* 19 How. 355; *United States* v. *Teller,* 107 U. S. 64; *Frisbie* v. *United States,* 157 id. 106.) It was held in the case last above cited: "Congress having the liberty to give or withhold pensions may prescribe who shall receive them and determine all the circumstances and conditions under which any application therefor shall be prosecuted. No man has a legal right to a pension and no man has a legal right to interfere in the matter of obtaining pensions for himself or others. The whole control of that matter is within the domain of congressional power.—*United States* v. *Hall,* 98 U. S. 343."

In *Pecoy* v. *City of Chicago, supra,* we held that a pensioner has no vested right in a pension fund even though such fund has been accumulated, in part, by deductions from his salary, and that the legislature might at any time change the law with respect to the term of service and other conditions under which a pension would be given. If, then, it is true that such matters are peculiarly and entirely within the control of the legislature so far as the interest of the pensioner is concerned, it is true so far as anyone else is concerned. The legislature having spoken, it is the duty of the courts to enforce the law as enacted, according to its plain and unmistakable provisions. The courts have no power to change the statute and under the guise of judicial construction either bestow or take away a pension, much less is there such power in a civil service commission or in the respondent board, which are creatures of the statute and cannot rise above the source of their powers. If, as contended by counsel for appellee, the pension roll is a roll of honor, it is for the legislature, and no other governmental agency, to prescribe the conditions for being on such roll. Ordinarily twenty long years of faithful service in any calling ought in itself to count for something, and the legislature evidently thought so; but whether it did or not is

not a proper subject of inquiry here, as long as it has seen fit, in plain and unmistakable terms, to fix as the only condition and prerequisite for a pension twenty years of service and ceasing from such service. The legislature has further seen fit to provide that the only acts for which a pensioner may be deprived of his pension are conviction of felony, becoming an habitual drunkard or a non-resident of the United States. Accordingly, whether the appellant was properly discharged by the civil service board, or whether he was discharged at all, has nothing to do with his right to a pension under the statute. Under the circumstances, for this court, or any other, to impose conditions other than those imposed by the legislature would be to change the law by judicial construction. If the legislature desires to restrict pensions in the future to those policemen who have never been in a saloon or used profane language, or been discharged for such conduct, it undoubtedly has that right, but when it has not done so, neither the court, the respondent board nor the civil service commission has authority to impose such conditions.

As to the second defense set up in the answer, it seems to be the theory of counsel for respondent that appellant, by bringing suit to set aside the order of the civil service commission and to be restored to his position as captain of police, has in some way waived his right to a pension. Whatever position appellant takes, either that he is entitled to be restored to the active list of policemen or to be a pensioner, can in no way prejudice respondent or estop the appellant from asserting and establishing whatever lawful rights he has in the premises. If the civil service board had no jurisdiction to try appellant or authority to discharge him, or if the cause of discharge was trivial, and he has a legal remedy, he has the right to pursue such remedy. It is a matter entirely separate and distinct from and in no way concerned with his rights in this proceeding. If appellant is successful and is restored to the active list as a

captain of police, of course, under the terms of the law, he would have no right to a pension as long as he was in active service, but the mere pendency of a suit through which he might ultimately be restored to the active list could have nothing to do with his case unless he should be actually restored.

For the reasons given the judgment of the Appellate Court will be reversed and the judgment of the superior court affirmed.

*Judgment of Appellate Court reversed.*
*Judgment of superior court affirmed.*