[No. 29029. *En Banc.* May 3, 1944.]

E. O. LUELLEN, *Appellant,* v. THE CITY OF ABERDEEN *et al., Respondents.*[1]

[1]Reported in 148 P. (2d) 849.

*T. H. McKay,* for appellant.

*A. D. Gillies,* for respondents.

GRADY, J.—This action was brought by E. O. Luellen against the city of Aberdeen, its mayor and chief of police, the members of the civil service commission, and the city comptroller, to secure a judgment of the court adjudging that his removal as captain of police was illegal and void, and that he is entitled to the standing and status of a member in good standing of the police department of the city. The defendants demurred to the complaint. The demurrer was overruled by the court but without prejudice to a reargument thereon at the time the case was called for trial.

At the opening of the trial, the court permitted counsel for plaintiff to make a statement of the case. A copy of the civil service ordinance referred to in an amended complaint and the amendments thereto were made a part of the record by consent of all parties. The court considered the amended complaint, the ordinance, and the statement of counsel for plaintiff as a part thereof, and entered an order sustaining the demurrer upon the grounds that plaintiff was guilty of laches, that the action had not been commenced within the time allowed by law, and that the amended complaint, as supplemented by the ordinance and the statement of counsel for plaintiff, did not state facts sufficient to constitute a cause of action. The plaintiff refused to plead further, and a judgment was entered dismissing the action, from which this appeal is taken.

In order to have a proper perspective of what is before this court for decision, the substance of the complaint and the statement of counsel and pertinent portions of the ordinance must be set forth.

For more than ten years prior to October 3, 1938, appellant had been a member of the police force of the city of Aberdeen, and, at that date, was captain of police. In June, 1938, appellant became ill and was unable to perform his

duties, which illness and inability to work was not caused by dissipation or abuse. He was granted a leave of absence, and, on the advice of his physician, went to California. His regular salary was paid to him up to October 1, 1938.

In 1932, the city of Aberdeen passed an ordinance placing police officers under civil service. The substance of the provisions of the ordinance which we deem applicable to the appellant is as follows:

The police officers in the employ of the city at the time of the passage of the ordinance were deemed to be qualified to enter the civil service upon having a physical examination by the health officer and filing a certificate of good health. They were to hold office until removed or retired, and could be removed by the appointing officer (which we hold to be the chief of police) only upon the filing by him with the civil service commission of a statement in writing of the reasons therefor. The police officer was given five days thereafter within which to demand an investigation by the commission, and the commission was authorized to affirm or reverse the order of the appointing officer. A further provision was made that a police officer might retire on account of age or disability, in accordance with the provisions of the respective pension fund acts and the laws of the state, and that leave of absence might be granted, in which case, if for disability on account of sickness, the officer, when returning to duty, would resume his former position.

On October 3, 1938, the chief of police wrote appellant a letter as follows: .

"Please be advised that I, as Chief of the Police Department of the City of Aberdeen, have on this date ordered your removal as a member of the Police Department of the City of Aberdeen.

"This action is taken for the reason that your conduct in the past has been such as to bring discredit to the department and unbecoming to a Police Officer. This action has been taken only after thoroughly investigation your past conduct, and for the good of the department. There is nothing for me to do but to order your removal.

"I am today certifying to the Civil Service Board a statement in writing giving my reasons for your removal. Under the law you have your right of appeal to the Civil Service Board, as provided by the Civil Service Ordinance of the City."

It does not appear what reasons the chief of police gave to the civil service board for removal of appellant from the police force. The appellant was not informed what the reasons were other than as stated in the letter from the chief of police. Some time after receiving the letter, appellant wrote to the commission protesting his removal, and his wife also made a written protest. The record does not show when these protests were made, but thereafter the commission notified the appellant that it had made an investigation of the reasons given for his removal, and had approved the action taken by the chief of police.

The appellant made application to the board of police pension fund commissioners for a pension, but it was denied. The record does not affirmatively show why the petition was denied, but we infer that it was for the reason that the appellant was not then a member of the police force and therefore was in no position to apply for retirement and a pension.

A mandamus proceeding was then brought against the board. The court decided mandamus was not the proper remedy. A certiorari proceeding was then instituted. The action of the board was sustained by the court. The question involved was whether the appellant was entitled to a pension. The legality of the removal of the appellant from the police force was not brought before the court in any of these proceedings. No appeal was taken from either judgment of the court. Later, another certiorari proceeding was brought, but was dismissed on sustaining a plea of *res judicata*. Thereafter, the appellant employed his present counsel, and this action was brought to secure reinstatement as a police officer so that he might be in a position to apply for retirement and a pension.

There are four questions here for review: (1) whether the appellant has chosen the proper remedy; (2) whether

he is barred by laches from maintaining this action; (3) whether the action was brought within the time limited by law; and (4) whether the amended complaint, supplemented by the ordinance and the statement of counsel for appellant, states a cause of action.

*First.* It is urged by respondents that, when appellant was discharged, his remedy was to have the action of the chief of police and the civil service commission reviewed either by certiorari or mandamus, and that he cannot maintain the kind of action he has brought.

There is no doubt that the appellant might have maintained a certiorari proceeding and had the action of the city officials reviewed, but all that he could have accomplished would have been a judgment of the court that his discharge was (as we later point out) null and void on the face of the city records, and, if the city officials did not then see fit to reinstate him as a police officer, he would still have to proceed to compel his reinstatement.

It would seem too plain for argument that, if the proceedings taken to discharge a civil service employee under charter provisions are void on their face, he would have the right to treat them as a nullity and demand a reinstatement, and, if this was denied him, then proceed by mandamus. Although it is provided by Rem. Rev. Stat., § 1002 [P. C. § 7418], that a writ of certiorari may issue to correct a void proceeding, such a proceeding was optional with appellant. He might have felt it safe to secure an adjudication that the proceedings leading up to his final discharge were void, but the law does not require him to do so in order to assert his rights. *In re Long Island R. Co. v. Hylan,* 240 N. Y. 199, 148 N. E. 189; *Locke v. Lexington,* 122 Mass. 290; 11 C. J. 109, Certiorari, § 46.

The principle upon which these authorities rest is that it would serve no useful purpose and would be an idle and useless thing to prosecute a proceeding to set aside that which is void, hence is unnecessary even though the right is given so to do. Our attention has not been called to any case in which this court has held that review by certiorari is an exclusive remedy in cases of this kind.

We do not think it accurate to say that appellant might have had the legality of his discharge *reviewed* by mandamus. Mandamus is sought to compel action, and not to review it. In some of the cases decided by this court, the aggrieved civil service employees have proceeded by certiorari and in others by mandamus. In the latter cases, the employees have sought to compel reinstatement, and their complaints or affidavits alleged facts which they claimed rendered their discharge unlawful, and the answers of the adverse parties disclosed substantially the same matters as would have appeared in a return to a writ of certiorari.

In the certiorari cases, the courts proceeded to determine from the records before them whether they would review them, and, in the mandamus cases, proceeded to try the issues whether they were of law or fact.

In the case at bar, the appellant has elected to treat the proceedings taken leading up to his discharge as null and void on their face and has brought what is in effect a mandamus proceeding, praying in his complaint that it be adjudged that his discharge as a police officer was void, that he is entitled to the status of a police officer, and that he be reinstated.

In *Washington Security Co. v. State*, 9 Wn. (2d) 197, 114 P. (2d) 965, 135 A. L. R. 1330, relative to the scope of mandamus proceedings, we said, p. 211:

"The rule in this state relative to the scope of mandamus proceedings is stated in *State ex rel. Billings v. Lamprey*, 57 Wash. 84, 106 Pac. 501, as follows:

" 'In this state a proceeding in mandamus,

" ' " . . . is a judicial investigation, the object of which is the determination of civil rights, the same as any ordinary proceeding; not only the determination of rights, but their determination in such a way as to culminate in an effective judgment." *State ex rel. Race v. Cranney*, 30 Wash. 594, 71 Pac. 50.

" ' "In our practice, mandamus is nothing more than one of the forms of procedure provided for the enforcement of rights and the redress of wrongs. The procedure has in it all the elements of a civil action. . . . " *State ex rel. Brown v. McQuade*, 36 Wash. 579, 79 Pac. 207.'

"We have in this state many times permitted a wrongfully discharged or suspended civil service employee to bring a single action, in which could be determined both the wrongful character of the discharge or suspension and the right to back salary."

As a further illustration that, in this state, a discharged civil service employee is not limited to any special form of proceeding to assert his rights, see *State ex rel. Powell v. Fassett,* 69 Wash. 555, 125 Pac. 963, in which the employee, who was discharged without a hearing, was permitted to proceed by *quo warranto* to oust his successor and secure his own reinstatement.

It has been suggested that the action brought is not one in mandamus because it is brought by summons and complaint, as in the case of an ordinary civil action. But, while it seems to be customary to set forth the facts by affidavit, a notice given to the one to whom the return is directed, and the proceedings brought in the name of the state, this is not necessary, and the complaining party will not be turned out of court because he has proceeded in his own name and by summons and complaint. *State ex rel. Cicoria v. Corgiat,* 50 Wash. 95, 96 Pac. 689. In any event, if these questions are deemed of any moment, the proceedings can be corrected by amendment. The summons constitutes a sufficient notice, and the complaint, being verified, is the equivalent of an affidavit. There only remains an amendment to the caption of the summons and complaint. But it would seem that even this would be unnecessary in view of Rem. Rev. Stat., § 999 [P. C. § 7415], providing that "The party prosecuting a special proceeding may be known as the plaintiff and the adverse party as the defendant." We, therefore, hold that the action brought by the appellant was proper and affords him the basis for the relief he seeks.

*Second.* As the question of laches is raised by demurrer, we can only look to the complaint and the supplement thereto by the statement of counsel and the reasonable inferences that may be drawn in aid thereof to see if there is affirmatively disclosed any facts that establish laches. It

has been suggested that the pension board might have relied on the discharge of appellant and not have taken the necessary action to increase the pension fund so as to provide funds with which to pay a pension to him, but we cannot thus speculate. If there is any reason why the doctrine of laches should apply here, the facts must be set out in an answer and proof made before a court may say that appellant is barred from maintaining this action.

The appellant was dismissed from the service of the city October 3, 1938. It does not appear when final action was taken by the civil service commission. This action was commenced not later than August 15, 1941. In the intervening time, the charges against the appellant had been considered by the civil service commission, the appellant had taken proceedings before the pension board, and he had prosecuted the court actions referred to.

■ The doctrine of laches is a creature of equity and is grounded upon the principles of equitable estoppel. It does not bar an action short of the statute of limitations applicable thereto, unless it is made to appear that, by reason of the delay in asserting a claim, the other party has altered his position or has been otherwise injured by the delay. *Conaway v. Co-operative Homebuilders,* 65 Wash. 39, 117 Pac. 716; *State ex rel. Kubel v. Plummer,* 130 Wash. 135, 226 Pac. 273; *Auve v. Wenzlaff,* 162 Wash. 368, 298 Pac. 686; *State ex rel. Hearty v. Mullin,* 198 Wash. 99, 87 P. (2d) 280; *McKnight v. Basilides,* 19 Wn. (2d) 391, 143 P. (2d) 307.

The respondents cite the case of *State ex rel. Ball v. Knoxville,* 177 Tenn. 162, 147 S. W. (2d) 97, 145 A. L. R. 762, and the extensive annotation thereto. That and other cases cited and referred to in the annotation adopt the rule that the doctrine of laches must be applied strictly in a case where a public employee is wrongfully discharged or transferred to another department in which the compensation is less, and they hold that he is barred from relief unless he acts promptly to assert his rights, the underlying principle being based on considerations of public policy, to the end

that, if such person is successful in his action, the public service may be disturbed as little as possible, and that two salaries may not be paid for but one service. The reasons which prompted the courts to apply the doctrine of laches to the cases before them do not affirmatively appear in this case, and such cases are therefore not applicable.

In the case at bar, the appellant pursued what he conceived to be his remedies and, though they may have been mistaken ones, it demonstrates that he did not stand idly by and do nothing to assert his rights. None of the respondents have been prejudiced in any way by the delay. The demurrer on this ground should have been overruled.

*Third.* In his oral decision made at the close of the trial, the judge did not make any reference to the statute of limitations, but, in the order sustaining the demurrer, that was one of the grounds upon which it was based. The question is not discussed in the briefs of the parties, but it is one which will recur again, and we feel that it should be decided now in view of any further proceedings that may be taken.

Remington's Revised Statutes, § 159 [P. C. § 8166], subd. 2, provides that "An action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof, *or for any other injury to the person or rights of another not hereinafter enumerated*" (italics ours), shall be brought within three years from the time the cause of action accrues. We have held that the italicized part of the statute has reference to direct invasions of personal or property rights. The right involved here is not enumerated. *Northern Grain & Warehouse Co. v. Holst,* 95 Wash. 312, 163 Pac. 775; *Constable v. Duke,* 144 Wash. 263, 257 Pac. 637; *Noble v. Martin,* 191 Wash. 39, 70 P. (2d) 1064. The cases are cited as a construction of the statute, but, beyond that, they are not applicable to the facts of this case.

In the first two of the cases, the actions were based upon the alleged omission to perform official duties, and, as a result, the complainants sustained money losses. The third case arose in substantially the same way, but the omission

was that of bank officials. In none of the cases was there any direct act of any of the defendants that injured a property right of the complainants.

In this case, as we later point out, the property right had accrued and was a present existing right. The acts of the chief of police and the civil service board were an invasion of that right in that they prevented the appellant from acquiring a pension. Whenever the legally protected interest or property right of another is invaded or violated, such action constitutes an injury to it. 21 Words and Phrases (Perm. ed.), p. 437; Ballentine Law Dictionary, pp. 650-652. The language used by the legislature is broad and was intended to cover injury to that kind of property that is intangible in its nature, especially when the injury consists of some direct, affirmative act which prevents another from securing, having, or enjoying some valuable right or privilege. We, therefore, hold that the latter part of Rem. Rev. Stat., § 159, subd. 2, applies, and that this action is not barred.

*Fourth.* In determining whether the amended complaint, as supplemented by statement of counsel, states a cause of action, we think there are two questions to be considered: (a) Do the facts alleged in the complaint show that the proceedings taken, resulting in the discharge of appellant as a police officer, were void? (b) Can the appellant be legally removed as a police officer and thus be prevented from making claim for a pension?

The appellant urges that § 14 of the city ordinance applies. Under this section, a civil service employee may be dismissed if he wilfully or through culpable negligence violates any of the provisions of the ordinance and is convicted thereof after a trial before the commission. The section appears to provide a penalty for a violation of the ordinance provisions, while § 8 provides, in part, a method for removal of a civil service employee, and, under it, one may be removed for cause and it not be necessary to convict him of a violation of any provision of the ordinance.

(a) Section 8 of the ordinance (No. 3613), pursuant to

which the chief of police and the civil service commission acted, is as follows:

"REMOVALS. Every officer or employee in the classified civil service shall hold office until removed or retired. Any officer or employee in such service may be removed by the appointing officer only upon the filing with the Commission of a statement in writing of the reasons therefor. Any officer or employee so removed may within five (5) days after his removal demand an investigation. The commission shall forthwith make such investigation and its findings and decision shall be certified to the appointing officer and if the removal is not sustained thereby, the officer or employee so removed shall at once be reinstated. Nothing in this section shall limit the power of any officer to suspend, without pay, a subordinate for a period not exceeding thirty (30) days. In the course of an investigation, each member of the Commission shall have power to administer oaths and the Commission shall have the power to require the attendance of any officer or employee or other person, and production of books and paper relevant to such investigation. The provisions of this section shall not apply to the removal of the Chief of Police or Chief of the Fire Department."

It will thus be seen that several steps must be taken before the removal of a police officer can become complete. The appointing officer has to notify the police officer that he has removed him and must also file with the civil service commission a statement in writing of the reasons therefor. If the police officer does not desire to acquiesce in his removal, he may make his protest.

We must assume for the purposes of this case that the protest made by the appellant, and again by his wife, against his removal from the police force was sufficient to comply with the ordinance and was timely made. At any rate, the commission waived any deficiencies there may have been in both respects by proceeding to investigate the charges made.

While the ordinance provides for an investigation, it does not provide that any hearing, as a part thereof, shall be accorded the police officer or that he shall have any notice of the investigation or any opportunity to be heard in his own behalf. It is silent on these subjects.

■ The ordinance contemplates that a police officer in classified civil service shall be removed for cause only; otherwise, there would be no occasion for the requirement that reasons therefor be given in writing to the commission and an investigation made by it. Where such is the case, the rule is that the accused officer is entitled to a hearing on the charges made against him after reasonable notice thereof has been given.

Unless the governing statute or ordinance expressly excludes notice and hearing, both are implied, and this is particularly true when the statute or ordinance provides for an investigation and vests a commission with the power to administer oaths, summon witnesses, and produce evidence. The rules of law with reference to the power to remove officers and the requirements as to notice and hearing are so fully stated in the annotation in 99 A. L. R. 336 that we deem the citation of specific cases in support of what we have said to be unnecessary. The net result is that, in cases of tenure under civil service, where the officer shall hold office until removed or retired, it is implied that he can be removed for cause only and then only after due notice and hearing or opportunity given to be heard. These rules are recognized in *State ex rel. Powell v. Fassett,* 69 Wash. 555, 125 Pac. 963, and *State ex rel. Littau v. Seattle,* 189 Wash. 64, 63 P. (2d) 515. In the latter case, this court, speaking through Judge Steinert, said, p. 69:

"When, in a case of removal from office or position within the classified civil service, it appears that the appointing power has filed with the civil service commission a written statement of the reasons for the removal, upon charges that cannot be said to be utterly frivolous, and when it *further appears that the commission has awarded the party charged a full opportunity to be heard,* and that competent evidence has been produced tending, in some measure at least, to prove the charges made, the court may not inquire into the weight or sufficiency of the evidence. Its power is confined to the inquiry whether the officers entrusted with the authority to effect removals and discharge have acted within the prescribed rules." (Italics ours.)

■ The opportunity to be heard has at least three substantial elements: (1) the right to know seasonably the charges or claims preferred; (2) the right to meet the charges with witnesses and evidence; and (3) the right to have the aid of counsel. If any of these rights are denied a party, he does not have a hearing that is conformable to the elementary standards of fairness and reasonableness. No statement of the charges made against the appellant having been given him, nor any notice of any hearing having been given or accorded him, his removal was illegal and of no force or effect.

■ (b) Pursuant to Rem. Rev. Stat., § 9579 [P. C. § 1200], there was created a board of police pension fund commissioners, and § 9581 [P. C. § 1202], as amended by the Laws of 1933, chapter 30, p. 180, provides for the creation and maintenance of what is called a pension fund, and a sum equal to two per cent of the monthly compensation paid to police officers is required to be deducted from their salaries and placed in the fund. Section 9583, as amended by the Laws of 1937, chapter 24, p. 63, § 2, provides as follows:

"Whenever any person, while serving as a policeman in any such city shall become physically disabled by reason of any bodily injury received in the immediate or direct performance or discharge of his duties as such policeman, or become incapacitated for service, said incapacity not having been caused or brought on by dissipation or abuse, of which the board shall be judge, said board may, upon his written request filed with the secretary of said board, or without such written request, if it deems it to be for the benefit of the public, retire such person from said department, and order and direct that he shall be paid from said fund during his lifetime, a yearly pension equal to one-half of the amount of salary attached to the rank which he may have held in said police department at the date of such retirement, but not to exceed one hundred twenty-five ($125.00) dollars per month: *Provided,* That whenever such disability shall cease, such pension shall cease, and such person shall be restored to active service at the same salary he received at the time of his retirement." Rem. Rev. Stat. (Sup.), § 9583 [P. C. § 1204].

It may be well to observe here that, while the act of which these sections are a part refers to what a police officer receives when he retires from service as a "pension," it is not such as that term is legally defined. A pension is a gratuity extended to an individual by his sovereign as a reward for past services. The title of the act is "AN ACT to create a police relief, health and insurance fund in incorporated cities of the first class, providing for the disbursement thereof, and creating a Board of Police Pension Fund Commissioners." (Laws of 1909, chapter 39, p. 59.) The law relating to funds created for the foregoing purposes must be our guide in deciding this case, and not that relating to pensions, as it is entirely different in many respects. However, as the act uses the word "pension" and so have the parties to this case, we shall do likewise but bearing in mind at all times the distinction noted above.

It will be seen from a reading of these statutes that, when a police officer becomes incapacitated for service and the incapacity has not been caused or brought on by dissipation or abuse, he is eligible to make a written request for retirement and a pension, or the board, if it deems it for the benefit of the public, may retire the police officer and provide for the payment of a pension to him.

It appears from the record that, at the time of his removal, the appellant was eligible to make the request for retirement and a pension, but, by reason of his removal, he became ineligible because it quite clearly appears from a reading of the pension act that one must have the status of a police officer before he can apply for retirement and a pension. There is nothing in the act barring a police officer from a pension because of any misconduct on his part, though he may be removed for cause and thus be unable to receive any further compensation for services rendered. He is eligible to make application under § 9583 as amended when the prescribed conditions exist. After a pension has been granted to him, it may be withdrawn for the causes specified in § 9588 [P. C. § 1209], as amended by the Laws of 1937, chapter 24, p. 64, § 5; but that has nothing

to do with the granting of a pension as it relates to the doing of or failure to do subsequent acts. A police officer who has met all the statutory requirements so as to make him eligible to apply for reinstatement and a pension, has established a right which the law will protect, subject to certain limitations not material in this case. *State ex rel. Holton v. Tampa,* 119 Fla. 556, 159 So. 292, 98 A. L. R. 501 and annotation; *Retirement Board of Allegheny County v. McGovern,* 316 Pa. 161, 174 Atl. 400; *O'Dea v. Cook,* 176 Cal. 659, 169 Pac. 366; *Gaffney v. Young,* 200 Iowa 1030, 205 N. W. 865; *Stiles v. Board of Trustees of Police Pension Fund,* 281 Ill. 636, 118 N. E. 202.

There are many similar cases which might be cited, but we think these are sufficient to show the trend of judicial thought on the subject involved. They base their views that a vested right exists upon the theory that, when the police officer has met all the requirements of the statute, he has something that has ripened into a contractual obligation or something so nearly like it as to be governed by the same principles.

With this as a basis, we find no difficulty in reaching the conclusion that, when this right was created, the chief of police and the civil service commission had no legal right to remove the appellant from his position and thereby prevent him from being eligible to make application for retirement and a pension. By the terms of the ordinance, it was within the power of the chief of police and the commission, by proper procedure, to have removed the appellant from his position so that he might no longer render service to the city as a police officer and receive compensation therefor; but this could not be done in so far as his eligibility to apply for retirement and a pension was concerned.

We, therefore, hold that the appellant, having met all the requirements of § 9583 as amended, became entitled to apply for retirement and a pension thereunder, and that his removal from office was invalid for the reason that he was not accorded a hearing on the charges preferred against

him, and it was also invalid to the extent that it deprived him of the right to apply for retirement and the pension that follows.

The judgment of dismissal of the action is reversed, and the cause remanded, with instructions to overrule the demurrer to the amended complaint as supplemented by the ordinance referred to and the statement of counsel.

BLAKE, ROBINSON, JEFFERS, and MALLERY, JJ., concur.

MILLARD, J., dissents.

BEALS, J. (dissenting)—In his amended complaint in this action, plaintiff, after alleging that the city of Aberdeen is a municipal corporation, that defendants Horrocks and Dean are, respectively, mayor and chief of police of the city, and that other defendants are members of the city civil service commission, and defendant Lindberg city comptroller, alleged that during the year 1932 the city enacted ordinance No. 3613, bringing the members of its police and fire departments within civil service regulations made effective by the ordinance referred to. Certain provisions of the ordinance which are hereinbelow set forth were pleaded, and it was further alleged that plaintiff, E. O. Luellen, had for more than ten years prior to the institution of the action been a member of the city police department, and that June 21, 1938, he was promoted to the position of captain of police; that at about the same time he became sick, and was granted leave of absence.

The complaint then alleged that October 3, 1938, defendant Dean, the chief of police, attempted to separate plaintiff from the police force, and mailed to plaintiff a letter reading as follows:

"Mr. Omer E. Luellen
"Box 797
"Palm Springs, California.
"Dear Sir:
   "Please be advised that I, as chief of the police department of the city of Aberdeen, have on this date ordered your removal as a member of the police department of the city of Aberdeen.

"This action is taken for the reason that your conduct in the past has been such as to bring discredit to the department and unbecoming to a police officer. This action has been taken only after thoroughly investigation your past conduct, and for the good of the department. There is nothing for me to do but to order your removal.

"I am today certifying to the civil service board a statement in writing giving my reasons for your removal. Under the law you have your right of appeal to the civil service board, as provided by the civil service ordinance of the city.

"Yours very truly,<br>
"GEO. S. DEAN<br>
"Chief of Police,<br>
"City of Aberdeen"

Plaintiff further alleged that the chief of police as such had no authority to order the separation of plaintiff from his position as a member of the police force, that the act of the chief was illegal and void, and that plaintiff remained a member of the police force, absent on sick leave, notwithstanding the action of the chief of police above referred to.

Plaintiff further alleged that he had been refused any salary by the city, and

"   .   .   . that at the time of his attempted separation from his office, as aforesaid, plaintiff duly protested to the civil service commission against the action of defendant Dean, but his protest has at all times been ignored."

Plaintiff further pleaded the existence of the police pension fund; that he was incapacitated for further police duty, and was entitled to retire as a police officer at a certain monthly stipend. Plaintiff prayed for judgment declaring that his purported separation from the service was illegal and void; that he was entitled to the status of a member of the police department of city; and that he was eligible to retirement.

To this complaint the defendants demurred, upon the grounds that the court had no jurisdiction of the person of the defendants or the subject matter of the action; that the plaintiff had no legal capacity to sue; that several causes of action were improperly united; that the action had not

been commenced within the time limited by law; and that the complaint failed to state sufficient facts to constitute a cause of action. It seems to be agreed that this demurrer was by the trial court overruled, with leave to reargue the same when the case was called for trial. Accordingly, when the case was called, and after an opening statement by counsel for plaintiff, defendants' counsel reargued their demurrer to the complaint, which the court considered as amplified by the opening statement of plaintiff's counsel. After argument, the trial court sustained defendants' demurrer upon two grounds: First, that it appeared from the record that plaintiff had been guilty of laches and unreasonable delay in prosecuting the action; and, second, that the complaint, as amplified by the opening statement of plaintiff's counsel, failed to state facts sufficient to constitute a cause of action.

Plaintiff having elected to stand upon his complaint, and declining to plead further, judgment was entered dismissing the action, from which plaintiff has appealed.

The proceedings before the trial court at the time the action was called for trial, including the opening statement of appellant's counsel, have been made a part of the record by a regularly certified statement of facts.

The question presented is a very narrow one. Appellant contends that he has never been discharged from the police force of respondent city, because his attempted discharge by the chief of police was and is illegal and void, and that he is still a member of the force and entitled to retirement as a police officer.

As a portion of the colloquy between court and counsel for the respective parties, which is disclosed by the statement of facts, a copy of the ordinance of the city of Aberdeen, referred to by appellant in his complaint, was considered, and, as stated in the majority opinion, made a part of the record by consent. The pertinent portions of this ordinance read as follows:

"Sec. 8. REMOVALS. Every officer or employee in the classified civil service shall hold office until removed or retired. Any officer or employee in such service may be re-

moved by the appointing officer only upon the filing with the Commission of a statement in writing of the reasons therefor. Any officer or employee so removed may within five (5) days after his removal demand an investigation. The Commission shall forthwith make such investigation and its findings and decision shall be certified to the appointing officer and if the removal is not sustained thereby, the officer or employee so removed shall at once be reinstated. . . ."

"Sec. 14. PENALTY. Any person in the service of the city under civil service rules who shall wilfully or through culpable negligence violate any of the provisions of this ordinance, and who shall be convicted thereof after trial before the Civil Service Commission, shall be dismissed from the service of the city and not be subject to reappointment."

"Sec. 15. CERTAIN EMPLOYEES TO BE BROUGHT UNDER CIVIL SERVICE RULES. The present members, employees and officers of the police department and of the fire department of the city, are hereby deemed qualified to enter the civil service and shall come under civil service rules upon taking a physical examination by the health officer and filing with the Commission a certificate of good health. . . ."

"Sec. 36. CAUSES FOR REMOVAL. SEPARATIONS. The following are declared to be causes for removal or discharge of an officer or employee from the classified civil service of the city, although removals may be based upon causes other than those enumerated, namely: . . .

"(13) Conduct unbecoming an officer or employee of the city."

It is admitted that appellant was a member of the police force of the city, entitled to the benefits and protection of the ordinance. As disclosed by the statement of facts and his opening statement, appellant's counsel stated that

". . . the record will show that the reasons that Dean filed with the civil service commission recited not only the one contained in the letter, which he sent to Luellen, but three or four other reasons of which Luellen never had any notice whatever."

Continuing his statement, appellant's counsel said:

"Then the record will show that the civil service commission went over those reasons assigned by the chief, but in the meantime, or not long after Luellen received this letter down at Palm Springs, California he wrote to the civil service commission protesting his removal. Mrs. Luellen also addressed a letter to the civil service commission protesting the removal of Mr. Luellen. Then the civil service, the record will show that they considered these reasons that Dean filed with them. Among them was several,—three or four reasons that were given in section 36 as causes for removal, but Dean in his letter to Luellen gave this one reason. Then the record will show that the civil service commission considered these reasons, made some sort of investigation and wrote a letter to Luellen saying that,—this chairman wrote a letter to Luellen saying that we have this day,—we have examined these reasons given for your removal and we think the chief was justified in making the removal, and then they give another reason in addition to the ones that Dean had sent to them. So finally there were about five different reasons considered by the civil service commission for the removal of Luellen."

While it appears from the record that appellant brought several actions in an attempt to obtain a judgment directing that he be placed upon the pension roll, which actions were all decided against him, these matters are immaterial, in so far as the case at bar is concerned.

The first question to be decided is whether or not appellant was, by the action of the authorities, separated from the police force. If he was so separated from the service, he cannot prevail in this action, as his remedy was by proceeding to obtain a review before the civil service commission of the proceedings leading up to his dismissal. That remedy is exclusive, and the courts have no jurisdiction to review an order of dismissal such as that which operates against appellant, if the order had the effect of separating the subject thereof from the service. Such an order may be arbitrary, unjust, or ill-advised to a degree, but it is final unless reviewed by the proper authority, in this case the civil service commission, in the manner prescribed by law. If, then, it appears from appellant's complaint and opening

statement that appellant was actually separated from the police force by the proceedings of which he complained, he may not prevail in this action, as he is not attempting to review by certiorari any order or ruling of the civil service commission. On the other hand, if from appellant's allegations it appears that the proceedings of which he complains were void as matter of law, as the majority hold they were, then he might well contend that he was entitled to judgment setting aside the order removing him from the police force.

Section 36 of the ordinance sets forth eighteen causes for removal or discharge of an officer or employee of the classified civil service, providing that the causes enumerated are not exclusive. By subparagraph (13), *supra*, "conduct unbecoming an officer of the city" is assigned as a cause for removal. By the letter from the chief of police to appellant, above quoted, appellant was advised that he was removed for the reason that his "conduct in the past has been such as to bring discredit to the department and unbecoming to a police officer." This statement substantially states the ground for removal set forth in the section of the ordinance referred to. Such a statement is sufficient.

By § 8 of the ordinance, *supra*, it is provided that any officer or employee under the civil service may be removed by the appointing officer only upon the filing with the civil service commission of a statement in writing of the reasons therefor. The section further provides that any person so removed may, within five days after removal, demand an investigation, whereupon the civil service commission shall forthwith make such investigation, and certify its findings to the appointing officer, etc.

The letter from the chief of police advised appellant that the chief was that day "certifying to the civil service board a statement in writing giving my reasons for your removal," and further advised appellant that he had the right of appeal to the board.

Appellant nowhere alleged that the chief did not file with the board the written statement referred to. On the con-

trary, in his opening statement appellant's counsel said that the commission "went over those reasons assigned by the chief."

In the chief's letter to appellant, the ground for appellant's removal was stated in substantially the language of the ordinance; that was a sufficient statement of the chief's reasons for removing appellant. It seems to me clear that appellant's removal was accomplished by the exact compliance with the provisions of the ordinance, and that appellant at that time ceased to be a member of the police force of the city of Aberdeen. His status as a police officer was absolutely terminated.

On this phase of the case, appellant apparently makes two contentions: First, that Chief Dean did not, as to appellant, occupy the relation of "the appointing officer" and for that reason had no authority to separate him from the service. Appellant bases this contention upon the fact that Chief Dean did not appoint appellant to the force, and that appellant received his civil service status pursuant to the ordinance upon its adoption in 1932. The term "appointing officer" manifestly refers to the officer possessing the power of appointing subordinates. Chief Dean occupied this position at the time of appellant's separation from the service, and possessed authority pursuant to the ordinance to act as he did.

Appellant then argues that he could be separated from the service only pursuant to § 14 of the ordinance, *supra*, after a formal trial before the civil service commission.

Section 14 is entitled "Penalty," and relates solely to wilful or culpably negligent violations of the ordinance. Section 36, above referred to, provides many causes for removal, many of which, such as "incompetency or inefficiency" (subparagraph 5), and "the contraction of some infectious disease or physical ailment or defect" which incapacitates the employee for the performance of his duties (subparagraph 14), could scarcely be considered as wilful violations of the ordinance. The same is true of subparagraph (13), *supra*, pursuant to which appellant was dis-

charged. It seems to me clear that when appellant was brought within the purview of the civil service rules, as provided by § 15 of the ordinance, *supra,* he became subject to the entire ordinance, and was subject to removal pursuant to § 8 thereof.

By § 8 of the ordinance, it is provided that any employee removed by the appropriate appointing officer "may within five days after his removal demand an investigation," whereupon the commission shall forthwith make such investigation and certify its findings to the appointing officer. According to the terms of the ordinance, the removal of the officer or employee is fully accomplished when the appointing officer directs such removal and files with the commission the "statement in writing of the reasons therefor," above referred to. The person removed then is accorded the privilege of a review of this order before the commission. Of course, such review means a full, fair, and complete hearing. The person removed may appear before the commission in person and by counsel, witnesses may be called and sworn, and the findings of the commission and its decision shall be certified to the appointing officer. This hearing, however, is not necessary to the accomplishment of the removal of the employee. It simply affords him an opportunity to recover the position from which he had already been removed. In this connection, the record discloses the following state of facts, as appears from the statement of appellant's counsel, above quoted:

At the time of his removal, appellant was in California. Soon after the receipt of the letter from the chief of police discharging him from the service, appellant wrote to the civil service commission, protesting his removal. Appellant's wife also wrote to the commission, protesting appellant's removal. The commission then considered the reasons for appellant's removal filed with them by the chief of police, which included several other reasons than the one stated in the letter from the chief to appellant. The commission, as stated by appellant's counsel, "made some sort of investigation," and wrote appellant, advising him

that the commission was of the opinion that appellant's removal was justified. It appears, then, that appellant did request a hearing before the commission, and that some sort of an investigation was made. We do not know what sort of a hearing appellant requested, or the nature of the investigation made by the commission. In any event, appellant took no steps to procure a further hearing, but apparently made an application to the board of police pension fund commissioners for a pension. He then, as stated in the majority opinion, instituted three proceedings before the superior court, in an endeavor to procure the status of a retired police officer. In all of these proceedings, he was unsuccessful, and the judgments or orders entered have become final.

When appellant was advised by the commission that the order of the chief of police dismissing him had been approved, several remedies were available to appellant. He could have, by certiorari, brought before the superior court for review the proceedings of the commission. If he had not been accorded the hearing which he had demanded, and to which he was entitled, he could have applied to the superior court for a writ of mandate requiring the commission to accord him such a hearing. Instead of taking some step to protect his rights, if any he had, he apparently acquiesced in the order of the commission, and, until the institution of this action in 1941, did nothing except attempt to be placed upon the retired list, thereby becoming the beneficiary of a pension.

This court has many times been called upon to consider the rights of municipal employees occupying a civil service status. In the early case of *Price v. Seattle,* 39 Wash. 376, 81 Pac. 847, the city appealed from a judgment granting a writ of mandate requiring the city to reinstate the plaintiff as an employee. It appeared that the plaintiff had been removed by the appointing officer, who "thereupon filed with the civil service commission a statement in writing showing his reasons for the removal," as required by the city charter. The same steps were taken in appellant's case. The plain-

tiff in the case cited thereafter demanded an investigation by the civil service commission, which confirmed the action of the appointing officer in removing the plaintiff. Thereafter the plaintiff brought the action referred to, demanding a mandatory injunction directing his reinstatement. Plaintiff contended that he had been discharged because of his refusal to perform labor outside of the required hours. *Inter alia,* the appellant city contended that the plaintiff had been removed from his position in strict compliance with the charter, and that the court could not review the action of the appointing officer and the civil service commission in such a proceeding as the plaintiff had instituted. This court reversed the judgment of the trial court, with direction to dismiss the action, saying:

"When, therefore, the appointing power files with the civil service commission a statement in writing showing good and sufficient reasons for the removal, and after investigation the commission confirms the action of the appointing power, the removal is complete, and any further appeal must be to public opinion."

It seems to me that this case is directly in point here.

In the case of *State ex rel. Wolcott v. Boyington,* 110 Wash. 622, 188 Pac. 777, this court reviewed and affirmed an order of the superior court dismissing a certiorari proceeding to review a decision of the civil service commission of Spokane. The relator contended that he had been unlawfully dismissed, and obtained a hearing before the civil service commission, at which evidence was introduced by all parties interested. As stated by this court, relator's contentions amounted in effect to no more than an argument that the civil service commission had erroneously decided against relator upon the merits, and that the superior court should have reversed the ruling of the commission. This court held that, under the charter of the city of Spokane, any

" . . . question as to what acts are, and what are not, sufficient to warrant the dismissal of an employee is a question to be decided by the civil service commission, just as the question of whether or not such cause exists in fact is to be decided by the civil service commission."

The court intimated that, if a hearing were unfair or arbitrary, an order of the commission might be subject to judicial review. This court discussed and distinguished the case of *State ex rel. Powell v. Fassett,* 69 Wash. 555, 125 Pac. 963, a proceeding by way of *quo warranto,* which is cited in the majority opinion in the case at bar, saying concerning that case:

"It is plain that the question there presented was reviewable in the courts because it was sought to discharge an employee without a statement of any cause therefor whatsoever. No question of merits was involved at all, but it was a question of whether or not the employee had been discharged for cause. That case is a good example of the nature of the inquiry courts are permitted to make touching such cases. Stated generally, we think it may safely be said that the subject of inquiry by the courts touching such cases is not whether they have been decided rightly or wrongly by the special tribunal created by law to decide them, but whether or not the city authorities, including the special tribunal, have proceeded in the manner prescribed by law, in this case the city's charter."

In the case of *State ex rel. Beebe v. Seattle,* 159 Wash. 392, 293 Pac. 459, this court affirmed an order of the superior court dismissing a mandamus proceeding upon sustaining a demurrer to the application. The relator had sought a writ of mandate from the superior court requiring his reinstatement as an employee of the city. In affirming the order of the superior court, this court said:

"Under our repeated holdings therefore, under the provisions of the Seattle charter and other like charters which have been quoted at length in various decisions, the courts have no power to inquire into the cause or reason for the removal. As we have said, the charter and the rules of the civil service commission provide an orderly procedure by which a discharged employee of the city may have the cause of his dismissal investigated, and the courts have no power or authority to alter or amend this procedure. They cannot inquire into the justice of the employee's cause, nor inquire whether the grounds upon which the discharge is based are well founded, unless it be in an extreme case, of which this is not one. Their power is confined to the inquiry

whether the officers empowered to make the discharge have in so doing acted within the prescribed rules."

The *Beebe* case was an original proceeding instituted in the superior court, not by way of certiorari to review acts of the civil service commission, but a proceeding in mandamus whereby the court was asked to reverse the order of the commission. This, in effect, is the proceeding in the case at bar.

In the case of *State ex rel. Littau v. Seattle,* 189 Wash. 64, 63 P. (2d) 515, which was also a proceeding in mandamus, this court affirmed an order of the superior court dismissing an application whereby the relator sought to compel his reinstatement as a member of the police department of the city. In the course of the opinion, we said:

"The principle of law governing the situation is this: When, in a case of removal from office or position within the classified civil service, it appears that the appointing power has filed with the civil service commission a written statement of the reasons for the removal, upon charges that cannot be said to be utterly frivolous, and when it further appears that the commission has awarded the party charged a full opportunity to be heard, and that competent evidence has been produced tending, in some measure at least, to prove the charges made, the court may not inquire into the weight or sufficiency of the evidence. Its power is confined to the inquiry whether the officers entrusted with the authority to effect removals and discharges have acted within the prescribed rules."

I agree with the majority in its statement that a review by way of certiorari of the removal from the service of a civil service employee is not necessarily exclusive, but I am strongly of the opinion that, in an application for a writ of mandate, or in such an action as this, which as stated by the majority is in effect an application for a writ of mandate, the only question which the plaintiff may present is whether or not the order of discharge of which he complains is absolutely void on its face. If the person discharged is complaining only that he was removed for improper or insufficient reasons, or was not accorded the hearing to which he was entitled, and shows no ground which would support

a holding as matter of law that his removal was void on its face, then he must proceed by certiorari and by that means review the acts of the appointing officer, or the civil service commission, or of both, by which he feels aggrieved. Of course, if the civil service commission has unlawfully refused to grant the person removed a hearing, the superior court may, in an application for a writ of mandate, direct that a hearing be granted.

In the case at bar, it seems to me clear that appellant was separated from the service of the city by the acts of the chief of police, which were within his authority and strictly in conformity with the charter provisions covering the matter of removals. It also seems plain that appellant did have a hearing before the commission. If he did have such a hearing, as he said he did, then to obtain relief he was required to review that hearing by way of a writ of certiorari. If appellant did not have a hearing before the civil service commission, he had a right to one and a remedy before the court. That remedy he is not pursuing in this action, which is a direct attack on the order of the chief of police removing appellant from the force. Upon the record before us, appellant is not entitled to prevail in such an action.

The trial court was of the opinion that appellant was also barred by laches, from maintaining this action. In my opinion, the complaint is not subject to demurrer upon this ground. Laches may be pleaded by answer, and the defense in this case should be so raised.

The complaint, supplemented by appellant's opening statement, however, for the reasons stated, fails to state facts sufficient to constitute a cause of action, or to entitle appellant to any relief, and the judgment appealed from should be affirmed.

SIMPSON, C. J., concurs with BEALS, J.

STEINERT, J. (dissenting)—I am in accord with the view expressed by Judge Beals to the effect that, when the chief of police filed with the civil service commission a statement in writing charging the appellant with conduct unbecoming

an officer, that act accomplished an immediate and effective "removal" of appellant from office, within the express language and intent of section 8 of city ordinance No. 3613, quoted in the majority opinion. I am also of the view that appellant's remedy was, as prescribed by that same section of the ordinance, by way of a demand for an "investigation" by the civil service commission, which, in my opinion, would necessarily involve a review by that body of the order of dismissal previously made by the chief of police and a consideration by it of all the facts relevant to such investigation.

It will be observed that the ordinance not only expressly permits "removal" of an officer or employee by the appointing officer, but also implies such authority by providing for "reinstatement" of an officer or employee so removed if the "removal is not sustained thereby."

However, I am in accord with the majority opinion in holding that in the proceedings before the civil service commission the party charged must be given a full opportunity to be heard and be accorded (1) the right to know seasonably the charges or claims preferred against him; (2) the right to meet the charges with witnesses and evidence; and (3) the right to have the aid of counsel. In this instance, the appellant has not, in my opinion, been accorded that opportunity or those rights; the investigation or hearing by the civil service commission, to whatever extent it may have gone, was wholly *ex parte,* in the absence of the appellant and without his knowledge as to the time, place, or scope of the proceeding.

It is true, as pointed out in both the majority opinion and in Judge Beal's dissent, that appellant mistook, or was ununcertain as to, his remedy. But that mistake or uncertainty has considerable justification, I think, when, as appears in the foregoing opinions, the members of this court themselves entertain such divergent views as to the proper method of procedure. The fact remains, however, that appellant did not sit idly by allowing his "removal" and the effect thereof to go unchallenged, but, under the guidance

of his counsel, took such timely steps as he thought were proper to obtain relief.

My conclusion is that, while the judgment of the trial court should be affirmed, it should be expressly understood that it is without prejudice to the right of the appellant to obtain from the civil service commission a full investigation of the matter, and that in such investigation the appellant shall have the right to know the specific charges against him, the right to meet the charges with witnesses and evidence, and the right to have the aid of counsel.

June 22, 1944. Petition for rehearing denied.

[1]Reported in 148 P. (2d) 847.